UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| O&G INDUSTRIES, INC. ET AL., ) | |
| ) | |
| Plaintiffs. ) | |
| ) | |
| ) | |
| ) | |
| v. ) | NO. 3:12-CV-00723 (JCH) |
| ) | |
| ) | |
| ) | |
| ) | |
| AON RISK SERVICES ) | |
| NORTHEAST, INC. ) | |
| ) | |
| Defendant. ) | AUGUST 1, 2012 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT AON RISK SERVICES NORTHEAST, INC.'S MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6).**

I.  **INTRODUCTION**

Plaintiffs' Opposition is based on the demonstrably false premise that the Court is not permitted to consider the basic documents that are the foundation for Plaintiffs' entire lawsuit, including the written contract that established the parties' respective rights and obligations. Plaintiffs contend that this Court's only function is the mechanical and clerical role of determining whether Plaintiffs successfully wrote down the necessary words to establish the *prima facie* elements of their claims. Plaintiffs could not be more wrong: under well-established authority, the Court must determine whether the complaint sets forth a plausible claim, and has the authority to consider documents that are integral to the complaint. In other words, a plaintiff cannot avoid a motion to dismiss by artfully pleading around the key documents.

The reason that Plaintiffs seek to prevent the Court from reviewing the foundational documents is that their language defeats all of Plaintiffs' attempts to state a claim. First,

Plaintiffs claim that Aon failed to obtain certain defense coverage allegedly required under the terms of the EPC Agreement, a contract between plaintiffs O&G Industries, Inc. ("O&G") and Kleen Energy, Inc. ("Kleen"). (*See* Opposition, hereinafter "Opp.," at 10-11.) However, the written Service Agreement between Aon and O&G explains in plain English that Aon is *not* required to provide any legal advice, and that it was *O&G's* responsibility – not Aon's – to review the policies and ensure that they satisfied O&G's insurance "requirements," and advise Aon if they did not. O&G does not (and cannot) allege that it ever told Aon that the policies were unsatisfactory because they failed to provide coverage required under the EPC. Thus, whether styled as breach of contract or professional negligence, Plaintiffs' claim fails.

Plaintiffs' "misrepresentation" claim fails because it is negated *by the very document on which it is based*. Plaintiffs argue that the CCIP Manual that Aon created states that there would be "follow form" coverage and that Plaintiffs therefore believed *all* policies would contain full "duty to defend" coverage. (*See id.* at 18-19.) However, the CCIP Manual states on its face that it is merely a summary and that the reader should look to the *policies themselves* for details about the coverage. The Manual also says *nothing at all* about whether there is a duty to defend under either the primary or the excess policies. The CCIP Manual therefore cannot possibly have "misrepresented" what the coverage was, and Plaintiffs cannot claim to have reasonably relied upon it for that purpose.

Finally, Plaintiffs Keystone Construction and Maintenance Services, Inc. ("Keystone") and Kleen are not parties to the Service Agreement, and therefore have no basis upon which they can assert claims against Aon, particularly because of the express "no third party beneficiaries" clause in the contract. Plaintiffs' argument that the Court may not review the Service Agreement, a document quoted extensively in the Plaintiffs' Complaint, is entirely contrary to controlling Second Circuit authority. (*See* Opp. at 23.)

The remaining arguments offered in opposition to Aon's Motion to Dismiss (hereinafter "Motion" or "Mot.") are equally unavailing, and do not prevent dismissal of the Complaint as a matter of law. Aon therefore respectfully requests that the Complaint be dismissed in its entirety for the reasons set out below and in its Motion.

## II. ARGUMENT

### A. The Court May Properly Consider the Services Agreement, the CCIP Manual, and the CCIP Policies in Resolving the Instant Motion to Dismiss

Plaintiffs' contention that Aon may not rely on the Service Agreement, the CCIP Manual, or the CCIP policies in support of its Motion is incorrect. (*See* Opp. at 7-8.) The Court's consideration of these documents also does not require conversion to a motion for summary judgment, as Plaintiffs have alternatively argued. (*See id.* at 8, n.1.) In fact, the Second Circuit has expressly considered and rejected the very arguments that Plaintiffs advance. See *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991). In *Cortec*, as here, plaintiffs argued that the court's inquiry on a 12(b)(6) motion should be limited to the four corners of the complaint and that the Court could not consider certain key documents, including a written contract governing the parties' relationship. *See id.* As here, plaintiffs argued that even though they had relied upon those documents in framing the complaint, their unilateral decision not to attach those documents to the complaint, or expressly incorporate them by reference, prevented the Court from considering them. *See id.* at 47-48. The Second Circuit rejected plaintiffs' argument, holding that the agreement and other documents were documents "in [plaintiffs'] possession or [documents plaintiffs] had knowledge of and upon which they relied in bringing suit," and were therefore "integral" to the complaint. *Id.* at 48. Plaintiffs could not simply fail to attach such documents to their complaint – documents "they apparently most wanted to avoid" – "as a means of forestalling the district court's decision on the motion [to dismiss]." *Id.* at 44. Moreover, because plaintiffs had "actual notice of all the information in the movant's papers and

3

ha[d] relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 [was] largely dissipated." *Id.* at 48.

Subsequent opinions have reaffirmed that defendants may introduce, and courts may consider, documents that are "integral" to the complaint and upon whose "terms and effects" the complaint "relies heavily,"[1] including contracts upon which the complaint depends. *Holloway v. King*, 161 F. App'x 122, 124 (2d Cir. 2005). This Court has held similarly. *See Kafafian v. Young*, No. 3:10-CV-1657 (JCH), 2011 WL 1124251, *1 (D. Conn. Mar. 25, 2011) (Hall, J.) ("When deciding a motion to dismiss under [Rule 12(b)(6)], the court 'may consider documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or' documents 'of which plaintiffs had knowledge and relied on in bringing suit.'") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

It is beyond question that the documents attached to Defendant's Motion to Dismiss are integral to the Complaint and that Plaintiffs "relied upon these documents in framing the complaint." *Cortec*, 949 F.2d at 48. Plaintiffs repeatedly reference and quote from these documents throughout the Complaint. (*See* Complaint ¶¶ 19-24, 26-31, 37-47, 48-51, 57-62, 65-66, 72, 76-81.) Indeed, the reason that Plaintiffs only selectively quote from these documents, while arguing this Court should not take notice of the documents in their entirety, is that the unquoted portions often flatly contradict Plaintiffs' arguments. The Court's review of the Service Agreement, CCIP Manual, and CCIP policies is not only proper on the instant motion, but is necessary to give this Court a full picture of their true and correct contents.

---

[1] Plaintiffs' attorneys are well aware that courts may properly consider documents that are integral to the complaint, such as the relevant contracts, on a motion to dismiss -- as they themselves have argued in a recent motion to dismiss. *See* Def's Mot. to Dismiss, *Illinois Nat'l Ins. Co. v. Tutor Perini Corp.*, No. 11-CV-00431 (PKC) at 4, n.3 (S.D.N.Y. July 14, 2011) ("In deciding this Motion, the Court may review the Illinois National Policy because it is incorporated into the Amended Complaint by reference . . .").

### B. Plaintiffs' Claims Must be Dismissed Because It Was O&G's Obligation, Not Aon's, to Review the Policies to Ensure That They Complied With The Requirements of the EPC Agreement

Aon and O&G, both sophisticated parties,[2] entered into a written agreement under which they agreed to define and limit their respective obligations with respect to the CCIP placement and administration. Now, however, Plaintiffs allege that Aon had an obligation to acquire defense costs outside limits at every layer of the CCIP because "insurance coverage for defense costs was a basic and well-understood requirement under the EPC" – an agreement O&G entered into with Kleen, and to which Aon was not a party. (Opp. at 10.) However, the Service Agreement says nothing about a duty to obtain excess coverage outside limits – in fact, the agreement does not make any mention of defense costs at all. Moreover, the Service Agreement expressly <u>disclaims</u> any obligation on the part of Aon to provide legal advice or opinions to O&G or to otherwise interpret legal documents. (*See* Service Agreement § I. 8.)

The Service Agreement requires Aon, on the one hand, to review the policies it obtains to make sure that they reflect the coverage that Aon had negotiated with each insurer. (Service Agreement, Ex. A ¶ 5.) The Service Agreement obligates O&G, on the other hand, to "[r]eview all insurance policies procured by [Aon] to ensure that they are accurate as to insurance coverage terms, *requirements*, and policy limits," and to "*advise [Aon] of any errors or desired changes.*" (Service Agreement § C. 7 (emphases supplied).) The argument that it was *Aon's* job to comply with the EPC Agreement is contrary to the plain terms of the Service Agreement.

Plaintiffs' argument that these provisions are somehow conflicting or ambiguous fails as a matter of law.[3] (*See* Opp. at 17.) As an initial matter, the determination of whether a

---

[2] Plaintiff O&G has over 1000 employees and purports to be "one of the largest and most diversified construction materials and services companies in the Northeast." O&G Industries, Inc., http://www.ogind.com/.

[3] Plaintiffs also incorrectly state that Aon "acknowledges conflicting provisions in the Service Agreement." (Opp. at 16.) Nothing could be further from the truth. Aon explained, at length, in its Motion that the provisions placed different obligations on each party that were reflective of their respective roles in the insurance placement. For plaintiffs to suggest that Aon stated otherwise is misleading and false.

contractual provision is ambiguous is a question of law for the Court to determine, and "any ambiguity in a contract must emanate from the language used in the contract rather than one party's subjective perception of the terms." *Lab. Corp. of Am. v. Schumann*, No. 3:06-cv-01566 (VLB), 2009 WL 275859, *3 (D. Conn. Feb. 4, 2009). The "mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *United Illuminating Co. v. Wisvest-Connecticut, L.L.C.*, 259 Conn. 665, 670, 791 A.2d 546, 550 (2002) (internal citations and quotations omitted). Moreover, in determining whether there is ambiguity in a contract, "[e]very provision of the contract must be given effect if it can be reasonably done, because parties ordinarily do not insert meaningless provisions in their agreements." *Andersen v. Governor and Co. of the Bank of Ireland*, No. 3:11-cv-355 (VLB), 2011 WL 6001621, *3 (D. Conn. Nov. 30, 2011) (internal citations omitted); *24 Leggett St. Ltd. P'ship v. Beacon Indus., Inc.*, 239 Conn. 284, 298, 685 A.2d 305, 313 (1996).

Far from being ambiguous, these provisions reflect the respective responsibilities that Aon and O&G agreed to undertake – namely, it was O&G's responsibility to evaluate its insurance needs and inform Aon of the nature and terms of the insurance coverage it required. This interpretation is necessitated by the plain language that obligates O&G, but *not* Aon, to review the CCIP policies to ensure that they comport with O&G's "requirements." Only O&G, as the customer and a party to the EPC Agreement, would be in a position to know what its insurance "requirements" were.[4] This construction gives full meaning to all the terms of the Service Agreement. In contrast, Plaintiffs' proposed interpretation would nullify O&G's express duty to "review all insurance policies procured by Aon," to "ensure that they are accurate" as to

---

[4] Plaintiffs' negligence and malpractice claims also fail because O&G's failure to review and alert Aon as to the purported errors in the excess policies constitutes the proximate cause of its injuries, as Aon established in its Motion to Dismiss. (*See* Motion at 13-15.) Plaintiffs' argument that it had no obligation to review the policies because Aon was also required to review the policies (albeit for a different purpose) is belied by the express terms of the Service Agreement. (*See* Service Agreement § C. 7.) O&G's negligence and failure to abide by its contractual obligations are therefore fatal to plaintiffs' negligence and malpractice claims.

"coverage terms" and "requirements, and to "inform Aon of any errors or desired changes." (Service Agreement § C. 7.) It would also completely deprive Aon of its bargained-for right to have an opportunity to *correct* any alleged "errors" in the coverage, rather than hear about them for the first time in a lawsuit. Plaintiffs' interpretation would nullify these express terms, and cannot be accepted. *See Andersen*, 2011 WL 6001621 at *3; *24 Leggett St.*, 239 Conn. at 298.

### C. Plaintiffs' Negligent Misrepresentation Claim Must be Dismissed Because It Is Contradicted By The Very Document On Which It Is Based

Plaintiffs' negligent misrepresentation claim must be dismissed because Plaintiffs' purported reliance on the CCIP Manual is unreasonable as a matter of law. (*See* Opp. at 18-19.) Plaintiffs again rely solely on the CCIP Manual's statement that the excess policies "follow form" to the CCIP primary policy. (*Id.*) However, Plaintiffs ignore that the CCIP manual:

1. Expressly states that it provides only a summary of the coverage terms (*See* Mot., Ex. F at 3 ("This Manual . . . provides a *basic* description of CCIP coverage) (emphasis in the original));

2. Expressly directs the reader to *the policies themselves* for a full understanding of the coverage terms (*See id.* at 4 ("This Manual does not [p]rovide coverage interpretations [or] [p]rovide complete information. . . the provisions of the actual OCIP [sic] insurance policies shall govern.")); and

3. Says *nothing whatsoever* about coverage for defense costs. (*See id., passim.*)

Because the CCIP Manual itself negates any possible claim of reasonable reliance, Plaintiffs' misrepresentation claim fails as a matter of law.[5] *See Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, No. 3:08-cv-1958 (CFD), 2010 WL 1882316, *6 (D. Conn. May 10, 2010) (dismissing negligent misrepresentation claim based on extrinsic statements where the parties disclaimed reliance on such statements and, in a written contract, set out precise

---

[5] Moreover, a statement that a policy "follows form" to the primary policy is not a statement that it contains all of the same terms *in haec verba*. A "follow form" policy is one that adopts the terms of a different policy *except as otherwise stated*. See 1A *Couch on Ins.* § 9:16 (3d ed. 2006) ("A follow form clause makes the reinsurance agreement subject to the terms and conditions of the original insurance policy <u>except to the extent that the reinsurance agreement defines the scope of coverage differently</u>.") (emphasis supplied). The CCIP manual's description of the excess policies as "follow-form" was entirely accurate, and that is why it directed the reader to review the policies themselves for a full understanding of the coverage terms.

7

terms that made reliance on such extrinsic statements unreasonable). Plaintiffs' only response is to seek to prevent the Court from considering these documents – which, as discussed above, the Court is plainly entitled to do. Finally, contrary to Plaintiffs' contention that the reasonableness inquiry involves "disputed issues of fact," (Opp. at 19), the only case we have found interpreting a project insurance manual has held that claims such as these are "not viable for lack of reasonable reliance <u>as a matter of law</u> in light of the manual's disclaimers stating that it provides an overview and that the policies alone govern coverage." *KSW Mech. Servs., Inc. v. Willis of N.Y., Inc.*, 879 N.Y.S.2d 238, 238 (1st Dep't 2009) (emphasis supplied).

### D. Plaintiffs Keystone and Kleen Do Not Have Standing to Bring Claims Against Aon

#### 1. The Service Agreement Expressly Disclaims Third Party Beneficiaries

In an effort to avoid the plain language of the Service Agreement, which reads, "There are no third party beneficiaries to *this Agreement*," (Service Agreement § I. 14 (emphasis supplied)), Plaintiffs argue that this disclaimer is somehow limited only to three potential types of third party claims because of the section's heading and subsequent language. (*See* Opp. at 23-24.) Yet the disclaimer expressly governs the "Agreement," a defined term that means the "Service Agreement," not just portions or subsections of that agreement. (*See* Service Agreement, preamble.) Plaintiffs' interpretation also ignores Section 18 of the Service Agreement, which states, "The headings of the various sections of this Agreement are inserted for convenience only, and are not intended to affect the meaning or interpretation of this Agreement." Plaintiffs' efforts to limit the effect of the disclaimer render it meaningless and are therefore improper. *See Transatlantic Lines LLC v. United States*, No. 3:06-CV-354 (JCH), 2007 WL 735705, *2 (D. Conn. Mar. 5, 2007) ("[P]rovisions of a contract must be so construed as to effectuate its spirit and purpose . . . an interpretation which gives a reasonable meaning to all of its parts will be preferred to one which leaves a portion of it useless, inexplicable,

8

inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result.") (internal citations and quotations omitted).

Second, Plaintiffs assert that it is the parties' intent to either create or bar third party beneficiaries at the time of contracting that governs whether there are third party beneficiaries to the contract. (See Opp. at 20.) It is unclear why Plaintiffs believe that point helps their position, as it in fact shows why dismissal is appropriate. Here, the parties made their intention *not* to create third party beneficiaries as clear as possible, by the plain terms of the contract itself. Moreover, the Service Agreement states that it is a complete expression of the parties' agreement regarding the matters set forth therein, and that it replaces and supersedes any other understandings between the parties. (See Service Agreement § I. 16.) Plaintiffs therefore cannot rely upon any other alleged "understandings" regarding third party beneficiaries.[6]

### 2. Aon Does Not Owe Kleen or Keystone a Duty of Care

Plaintiffs argue that Aon owes Kleen and Keystone a duty of care (see Opp. at 26), while ignoring Connecticut law holding that an insurance broker's duty in tort runs only to those in privity with the broker. See Reyes v. Nautilus Ins. Co., No. CV10601325S, 2012 WL 1004302, *14 (Conn. Super. Ct. Mar. 6, 2012) ("Looking at the duty of insurance agents and companies in these contexts, Connecticut courts are willing to place affirmative duties on them only when they are in privity to the party seeking compensation prior to the event triggering coverage and only as it relates to their specialized knowledge, namely insurance terms and coverage."); see also 43 Am. Jur. 2d Insurance § 166 (2d ed. 2003) ("[T]here is also authority that an agent cannot be

---

[6] That Aon agreed to provide certain services to administer the CCIP which indirectly involved the various subcontractors involved in the Kleen Project does not demonstrate that it intended to undertake any direct obligation to Kleen or Keystone. While arguably Kleen and/or Keystone may have been foreseeable beneficiaries of the Service Agreement, that is insufficient as a matter of law to create rights as third party beneficiaries to the contract, as case law cited by Plaintiffs themselves establishes. See Pelletier v. Sordoni/Skanska Constr. Co., 264 Conn. 509, 532, 828 A.2d 72, 86 (Conn. 2003) ("foreseeability alone is insufficient to create third party beneficiary rights"); see also Reyes v. Nautilus Ins. Co., No. CV10601325S, 2012 WL 1004302, *5 (Conn. Super. Ct. Mar. 6, 2012) (same).

held liable for damages sustained by an injured third party as a consequence of the agent's failure to procure insurance, as the third party is not in privity with the agent.").

Plaintiffs rely on inapposite case law for their argument that privity is not required to assert negligent misrepresentation claims against insurance brokers by reference to claims against *other types of professionals*.[7] (*See* Opp. at 26 (citing *Lappostato v. Terk*, No. CV106009815S, 2012 WL 447597, *4 (Conn. Super. Ct. Jan. 18, 2012) (stating that no privity is required to maintain a negligent misrepresentation claim against an attorney); *Shawmut Bank Conn., N.A. v. Deloitte & Touche*, No. CV 94-0462508S, 1995 WL 283917 (Conn. Super. Ct. Apr. 25, 1995) (finding plaintiff to have sufficiently alleged facts showing accountants owed a duty of care based on plaintiff's approval of a loan after relying on financial statements prepared by accountants).) The controlling authority demonstrates that dismissal is appropriate.

### III.   Conclusion

For the reasons set for the above, Defendant Aon Risk Services Northeast, Inc. hereby requests that the Complaint in the above-captioned action be dismissed in its entirety, and that this Court grant such other relief as it deems just and proper.

---

[7]   Moreover, even in the non-insurance context where courts have not required privity to establish a duty of care, they have "looked principally to whether the primary or direct purpose of the transaction was to benefit the third party." *Lappostato v. Terk*, No. CV106009815S, 2012 WL 447597, *4 (Conn. Super. Ct. Jan. 18, 2012). Here, Aon's purpose in acquiring the CCIP policies was for the primary and direct purpose of serving its client, O&G, and only O&G, as made clear in the Service Agreement itself.

DEFENDANT
AON RISK SERVICES NORTHEAST, INC.


By ___/s/_____
    Richard W. Bowerman, ct04181
    Margaret P. Mason, ct4157
    LeClairRyan
    545 Long Wharf Drive, 9th Floor
    New Haven, Connecticut 06511
    Tel. No.: (203) 672-3202
    Fax No.: (203) 672-3237
    Richard.bowerman@leclairryan.com

And

Blair Connelly
Paul A. Serritella
Manasi Shanghavi
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Tel No.: (212) 906-1002
Fax No.: (212) 751-4864

Of Counsel

- Its Attorneys -

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                      __/s/_____
                      Richard W. Bowerman, ct04181