UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| O&G INDUSTRIES, INC., KLEEN | : | CIVIL ACTION NO. |
| ENERGY SYSTEMS, LLC, KEYSTONE | : | 3:12-CV-723 (JCH) |
| CONSTRUCTION AND | : | |
| MAINTENANCE SERVICES, INC., | : | |
| AND BLUEWATER ENERGY | : | |
| SOLUTIONS, INC. | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| AON RISK SERVICES NORTHEAST, | : | JANUARY 29, 2013 |
| INC. F/K/A AON RISK SERVICES, | : | |
| INC. OF MASSACHUSETTS, | : | |
|     Defendant. | : | |

**RULING RE: MOTION TO DISMISS (DOC. NO. 24)**

**I.      INTRODUCTION**

Plaintiffs O&G Industries, Inc. ("O&G"), Kleen Energy Systems, LLC ("Kleen"),

Keystone Construction and Maintenance Services, Inc. ("Keystone"), and Bluewater

Energy Solutions, Inc. ("Bluewater") (collectively "Contractor Controlled Insurance

Program ('CCIP') Participants") bring this suit against defendant, Aon Risk Services

Northeast, Inc. ("Aon") for declaratory judgment, breach of contract, negligence,

professional malpractice, and misrepresentation.  The case involves a dispute over

whether Aon failed to procure for the CCIP Participants insurance coverage that

included defense cost coverage in excess of the CCIP policies.

Aon moved to dismiss the Complaint on July 2, 2011, pursuant to Federal Rule of

Civil Procedure 12(b)(1) and 12(b)(6), for failure to state a claim for relief and lack of

standing as to Kleen, Keystone, and Bluewater.

1

## II.     STANDARD OF REVIEW

### A.   Standard of Review Under Rule 12(b)(1)

A motion to dismiss for lack of standing is made pursuant to Rule 12(b)(1).  See

Granite Comm., Inc. v. One Comm. Corp., 2008 WL 4793729, at *3 (D. Conn. Oct. 31,

2000) (citing Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436

F.3d 82, 88 (2d Cir. 2006)).  "In deciding a motion to dismiss, 'standing cannot be

inferred argumentatively from averments in the pleadings, but rather must affirmatively

appear in the record.'"  Spencer v. Kemma, 523 U.S. 1, 11, 118 S.Ct. 978, 140 L.Ed.2d

43 (1998).

A case is properly dismissed for lack of subject matter jurisdiction under

Fed.R.Civ.P. 12(b)(1) when the district court lacks the statutory or constitutional power

to adjudicate it.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000).  In

assessing a motion to dismiss for lack of subject matter jurisdiction, the court "accept[s]

as true all material factual allegations in the complaint."  Shipping Fin. Serv. Corp. v.

Drakos, 140 F.3d 129, 131 (2d Cir.1998) (citing Scheuer v. Rhodes, 416 U .S. 232, 236

(1974)).  The court, however, refrains from "drawing from the pleadings inferences

favorable to the party asserting [jurisdiction]."  Id. (citing Norton v. Larney, 266 U.S. 511,

515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)).  On a motion to dismiss pursuant to Rule

12(b)(1), the plaintiff must establish by a preponderance of the evidence that the court

has subject matter jurisdiction over the complaint.  Makarova, 201 F.3d at 113; see also

Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996); In re Joint E. & So. Dist. Asbestos

Litig., 14 F.3d 726, 730 (2d Cir.1993).  Courts evaluating Rule 12(b)(1) motions "may

resolve the disputed jurisdictional fact issues by reference to evidence outside the

pleadings, such as affidavits." Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir.2000).

   B.   Standard of Review Under Rule 12(b)(6)

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard.  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).  The

plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the Iqbal court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

## III.   FACTUAL BACKGROUND

On or about November 30, 2007, O&G and Kleen entered into an "Engineering, Procurement and Construction Agreement ("EPC Agreement") in connection with a construction project in Middletown, Connecticut, entitled "620 MW Combined Cycle Gas Fired Power Project. Compl. at ¶ 1, 9. Pursuant to the EPC Agreement, O&G was required, among other things, to provide insurance to protect O&G from claims arising out of its operations. Compl. at ¶ 10. The EPC Agreement required O&G to "maintain commercial general liability insurance on an occurrence basis for damages because of

4

bodily injury, property damage, [and] personal and advertising injury;" obtain "coverage for: . . . [d]efense expenses paid in addition to policy limits;" and obtain umbrella liability coverage "at minimum, with the same terms and conditions as the  . . . Commercial General Liability . . . insurance required by [the EPC] Agreement." Compl. at ¶ 11, 12.

The EPC Agreement allowed for the required insurance coverage to be provided under a CCIP.  Compl. at ¶ 13.  In addition, the EPC Agreement required O&G to indemnify and defend Kleen against liability and losses resulting from the negligence of O&G, its subcontractors, vendors, or agents.  Compl. at ¶ 14.  O&G entered into subcontracts with Keystone and Bluewater, under which both Keystone and Bluewater were required to participate in a CCIP for the project to the extent that O&G elected to implement one.  Compl. at ¶ 15-18.

O&G entered into a Service Agreement with Aon to procure insurance for the project.  Compl. at ¶ 19.  Under the Service Agreement, the CCIP was to include commercial general liability and umbrella/excess liability coverage.  Compl. at ¶ 20. Aon promised in the Service Agreement to:

> "Develop, recommend, negotiate, and place insurance and/or risk financing programs for all CCIP Coverages; [m]arket to, and negotiate terms and conditions of, the CCIP Coverages with prospective CCIP insurers, and take such steps as [Aon] deem[ed] appropriate to implement the CCIP Coverages; [r]eview the CCIP policies placed by [Aon] to ensure that they [were] accurate as to the insurance coverage terms and policy limits that [O&G was] purchasing, and ... advise [O&G] of any errors or required changes to such policies and [p]repare ... a CCIP insurance manual describing the CCIP Coverages, administration, and claims procedures, for review by [O&G's] legal counsel."

Compl. at ¶ 21.  O&G agreed, under the Service Agreement, to "[r]eview all insurance policies procured by ARS to ensure that they are accurate as to insurance coverage terms, requirements, and policy limits, and advise ARS of any errors or desired changes

to such policies."[1]  Def.'s Mem. in Supp. Mot. to Dismiss, Ex. B, at 2.  The Service Agreement stated that "there are no third party beneficiaries to this Agreement."  Id. at 9.

O&G requested that Aon procure the insurance coverage required under the EPC Agreement.  Compl. at ¶ 24.  Aon knew that the EPC Agreement required O&G to secure primary commercial general liability coverage with defense costs coverage outside limits and umbrella/excess liability coverage with the same terms and conditions as the primary policy.  Compl. at ¶ 29.

Aon procured the CCIP for O&G.  Compl. at ¶ 25.  The CCIP provided for per occurrence limits totaling $51 million over four policies.  Compl. at ¶ 26.  The four policies were: a primary commercial general liability policy with limits of $1 million per occurrence, a first layer commercial excess liability policy with limits of $10 million per occurrence in excess of $1 million, a second level excess liability policy with limits of $15 million per occurrence in excess of $11 million, and a third level commercial excess liability policy with limits of $25 million per occurrence in excess of $26 million.  Compl. at ¶ 26.  The primary policy obtained by Aon contains the proper defense cost coverage in addition to policy limits, but the excess CCIP policies do not require payment of defense costs.  Compl. at ¶ 30.

---

[1] The parties dispute whether the court may consider the Service Agreement itself, which was not attached to the Complaint or incorporated by reference, on a Motion to Dismiss.  See Pl. Mem. in Opp. Mot. to Dismiss at 7; Def.'s Reply at 3.  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citing Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).  The CCIP Participants relied on the Service Agreement in drafting their Complaint.  See Compl. at ¶ 19-24 Therefore, it is integral to the Complaint, and the court may consider it on a Motion to Dismiss.

Aon prepared a CCIP insurance manual describing the CCIP coverages ("CCIP Manual"), which Aon provided to each of the CCIP Participants.  Compl. at ¶ 27.  The CCIP Manual includes language that, "[t]he information in this manual is intended to outline the CCIP.  In the event any provision of this Exhibit, the Insurance Manual, the Contract Documents, or the summary below conflicts with the OCIP insurance policies, the provisions of the actual OCIP insurance policies shall govern."[2]  Def.'s Mem. in Supp. Mot. to Dismiss, Ex F, at 4.

In or around February 7, 2010, there was an explosion at the project site in Middletown, Connecticut, causing multiple deaths, injuries, and losses.  Compl. at ¶ 32.  A number of wrongful death, bodily injury, and property damage lawsuits were brought against the CCIP Participants.  Compl. at ¶ 33, 36.  Kleen has also requested substantial payment from O&G for property damage caused by the explosion.  Compl. at ¶ 34.  In addition, the builder's risk insurers that paid the property damage claims arising out of the explosion have initiated a subrogation action against Keystone, Bluewater, and others for reimbursement of the amounts it paid under the builder's risk insurance policies.  Compl. at ¶ 35.  O&G and Kleen are named as third party and apportionment defendants in that action.  Compl. at ¶ 35.  The primary CCIP, first excess CCIP, and second excess CCIP policies have all been exhausted.  Compl. at ¶ 37.  Great American Insurance Company has accepted responsibility to settle claims under the third excess policy, subject to a purported right to reallocate some of its settlement payments to other insurance policies, but has denied any defense obligation

---

[2] Again, the CCIP Participants argue that the court may not consider the CCIP Manual, which was attached to Aon's Motion to Dismiss.  See Pl. Mem. in Opp. Mot. to Dismiss at 7.  Plaintiffs relied on the CCIP Manual in drafting the Complaint, see Compl. at ¶ 28, therefore, the court may consider it.  See Chambers, 282 F.3d at 153.

under its policy to the CCIP Participants.  Compl. at ¶ 38.  Because of the lack of

defense costs coverage under the CCIP excess policies, the CCIP Participants have

incurred and will continue to incur substantial costs related to defending themselves in

the actions related to the explosion.  Compl. at ¶ 39-42.

## IV.    DISCUSSION

### A.  Standing

Aon argues that Kleen, Keystone, and Bluewater lack standing to pursue their

claims for tort liability and breach of contract against Aon because they are not parties

or third party beneficiaries to the Service Agreement.  "In general, in order to claim

breach of contract, the plaintiff must be a party to the contract."  Reyes v. Nautilus Ins.

Co., 2012 WL 1004302, at *4 (Conn. Sup. Ct. Mar. 6, 2012).  However, Connecticut

courts have recognized an exception when the party bringing suit is an intended third

party beneficiary.  Id.  "A third party beneficiary may enforce a contractual obligation

without being in privity with the actual parties to the contract."  Id. (quoting Rapaport &

Benedict, P.C. v. Stamford, 39 Conn. App. 492, 497 (1995)).

"[T]he ultimate test to be applied [in determining whether a person has a right of

action as a third party beneficiary] is whether the intent of the parties to the contract was

that the promisor should assume a direct obligation to the third party [beneficiary]."  Id.

(quoting Dow & Condon, Inc. v. Brookfield Development Corp., 266 Conn. 572, 580-81

(2003)).  "[I]ntent is to be determined from the terms of the contract read in the light of

the circumstances attending its making, including the motives and purposes of the

parties."  Id.

Only O&G was a party to the Service Agreement with Aon; therefore, for Kleen, Keystone, and Bluewater to have standing, they must be third party beneficiaries.  Aon argues that it "took no obligation towards anyone apart from O&G . . . and thus [Kleen, Keystone, and Bluewater] cannot establish a basis on which they have standing to maintain a breach of contract cause of action."  Def.'s Mem. in Supp. Mot. to Dismiss at 20.  However, as the CCIP Participants argue, the Service Agreement states that the agreement is to procure a CCIP for Kleen's Middletown, CT project.  Id., Ex. B., at 1 (emphasis added).  In addition, Aon agreed to "[c]onduct CCIP orientation and training sessions for Client's Project team and subcontractors."  Id. at 11 (emphasis added).  Aon agreed to "provide the Client [O&G] with a subcontract addendum to effect the CCIP," while the agreement also directed O&G to provide Aon "with a list of all subcontractors who will receive the contractual addendum."  Id. at 11-12.  Further, according to the allegations in the Complaint, Aon procured the CCIP on behalf of O&G, Kleen, Keystone, and Bluewater as participants in the CCIP, see Compl. at ¶ 25, and prepared and provided the CCIP Manual to each of the plaintiffs.  See id. at ¶ 27.

These allegations are sufficient to plausibly assert that Aon intended to assume a direct obligation to Kleen, Keystone, and Bluewater as policyholders under the CCIP. Therefore, the CCIP Participants have alleged that they are third party beneficiaries to the Service Agreement and have standing to bring the breach of contract claim.  See Reyes, 2012 WL 1004302, at *4.

Aon argues that Kleen, Keystone, and Bluewater cannot be third party beneficiaries because the Service Agreement includes an explicit disclaimer against third party beneficiaries.  See Def.'s Mem. in Supp. Mot. to Dismiss at 19.  However, the

9

provision in the Service Agreement cannot be read in isolation.  The Service Agreement

reads as follows:

> "14. <u>Compliance</u>: "There are no third party beneficiaries to this Agreement.
> Client acknowledges and agrees that ARS shall not be deemed to have
> guaranteed, assured, or warranted on Client's behalf, or for the benefit of others:
> (a) The safety of Client's location(s);
> (b) That Client is in compliance with Federal, state, and local laws, statutes,
>     ordinances, recommendations, regulations, consensus codes, or other
>     standards; or
> (c) That compliance with, or implementation of, ARS' recommendations will
>     eliminate or reduce any or all hazards, accidents, or other losses."

Def.'s Mem in Supp. Mot. to Dismiss, Ex. B., at 9.  Read in context, the provision does

not necessarily disavow all third party beneficiaries.  Instead, given that the provision is

included in a paragraph headed compliance and which paragraph includes a detailed

description of the types of situations in which Aon will not incur an obligation for the

benefit of others—none of which are present in this case—the court concludes by a

preponderance of the evidence before it that the Service Agreement does not preclude

their third party status.

Because Kleen, Keystone, and Bluewater are third party beneficiaries to the

contract, they also have standing to bring tort claims against Aon because, as third

party beneficiaries, Aon owed them a duty of care.  Under Connecticut law, "a duty of

care may arise from a contract, from a statute, or from circumstances under which a

reasonable person, knowing what he knew or should have known, would anticipate that

harm of the general nature of that suffered was likely to result from his act or failure to

act." <u>Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A.,</u> 128 F.Supp.2d 86, 95 (D.

Conn. 2001) (citing <u>Burns v. Board of Educ.,</u> 228 Conn. 640, 646, 638 A.2d 1 (1994)).

"[C]ourts generally now permit actions for professional malpractice without reference to privity, so long as the plaintiff is the intended or foreseeable beneficiary of the professional's undertaking." Mozzochi v. Beck, 204 Conn. 490, 499 (1987).[3]

Based on the same analysis for determining that Kleen, Keystone, and Bluewater are third party beneficiaries to the Service Agreement, see supra, p. 9, this court concludes that the plaintiffs have sufficiently alleged that Kleen, Keystone, and Bluewater were the foreseeable beneficiaries of the Service Agreement, see Mozzochi, 204 Conn. at 499, and, therefore, having standing to bring their tort claims against Aon.

B.  Negligence/Professional Malpractice Claims

Aon argues that the CCIP Participants' claims for negligence and professional malpractice must be dismissed because the CCIP Participants fail to allege two of the required elements, namely breach of a duty of care and causation. See Def.'s Mem. in Supp. Mot. to Dismiss at 10.  Under Connecticut law, to prevail on a claim for negligence, a plaintiff must prove: (1) duty; (2) breach of that duty; (3) causation; and (4) actual injury or damages. See Murdock v. Croughwell, 848 A.2d 363, 367 (Conn. 2004).  Similarly, a claim for professional malpractice requires the plaintiff to allege: (1) the defendant had a duty to conform to a particular standard of conduct for the plaintiff's protection; (2) the defendant failed to measure up to that standard; (3) the plaintiff suffered actual injury; and (4) the defendant's conduct was the cause of the plaintiff's injury. See Shawmut Bank Connecticut, N.A. v. Deloitte & Touche, 1995 WL 283917, at

---

[3] Aon argues that this case is not controlling as it relates to a claim against "other types of professionals." Def.'s Reply at 10.  However, the case cites these general propositions about professional malpractice claims and then goes on to consider the law as it pertains to the particular profession of the defendant.

11

*1 (Conn. Supr. Ct. Apr. 25, 1995) (citing LaBieniec v. Baker, 11 Conn. App. 199, 202-203, 526 A.2d 1341 (1987).

First, Aon argues that it did not have a duty to acquire a CCIP that provided coverage of litigation costs outside limits at all layers of coverage. See Def.'s Mem. in Supp. Mot. to Dismiss at 11. Aon interprets the CCIP Participants' claim to be that "Aon should have understood the insurance requirements not merely from client communications, but from the terms contained in the EPC." Id. Aon argues that the Service Agreement did not obligate it to interpret the EPC Agreement to determine what type of insurance the CCIP Participants needed. Instead, the Service Agreement said that Aon "shall in no event give, be required to give, or be deemed to have given, any legal opinions, legal representation, or advice to Client." Id.

The CCIP Participants have pled sufficient facts to plausibly claim that Aon had a duty to obtain defense costs coverage in excess of the primary policy. O&G alleges that it requested that Aon provide the coverage outlined in the EPC, that Aon was aware that the EPC required umbrella/excess liability coverage that included defense costs, that the CCIP Manual prepared by Aon stated that the CCIP Excess Policies followed the form of the CCIP Primary Policy wording—meaning it included the defense costs which were included in the primary policy—and that Aon failed to procure that coverage for the CCIP Participants. Compl. at ¶ 11-12, 24, 28-29. Aon's argument that it was not obligated to interpret the EPC Agreement due to language in the Service Agreement regarding the rendering of legal advice is unavailing at this stage of litigation. Merely reading a contract that includes certain requirements does not necessarily constitute the rendering of legal advice. Making all inferences in favor of the CCIP Participants, the

12

Complaint sufficiently alleges that Aon breached its duty in failing to provide the coverage requested by the CCIP Participants.

Second, Aon argues that, because the CCIP Participants failed to review the policies procured by Aon to make sure they fit their insurance needs, Aon (1) did not have a duty to ensure the CCIP coverage was sufficient under the EPC; and (2) could not have been the proximate cause of the CCIP Participants' lack of excess defense costs coverage. Def.'s Mem. in Supp. Mot. to Dismiss at 12-13. Aon argues that O&G's "failure to alert Aon to any problem with the excess coverage was the proximate and superseding cause of its injuries." Id. at 13.

The court finds both arguments unavailing. Aon relies on an Eastern District of New York case, Transportation Ins. Co. v. AARK Construction Group, 526 F.Supp.2d 350 (E.D.N.Y. 2007), to support its intertwined claims that the CCIP Participants failed to state a claim because O&G had the duty and the last opportunity to review and correct the policies. Def.'s Mem. in Supp. Mot. to Dismiss at 12-13. This case fails to support Aon's assertions for two reasons. First, Aon's argument— that O&G's failure to alert Aon of any problem with its coverage relieves Aon of its duty—is based upon an interpretation of New York law[4] not binding on this court. Second, more recent New

---

[4] There is little Connecticut case law on this issue, and no case law that the court can find directly on point. In Ursini v. Goldman, the Supreme Court of Errors held that, although the general rule is that when a person reads and signs a formal written contract affecting his pecuniary interests, he is charged with having notice of its contents, if the insurance broker said or did anything to "mislead the person sought to be charged or to put a man of reasonable business prudence off his guard in the matter," the rule does not apply. See Ursini v. Goldman, 118 Conn. 554 (1934). The cases in Connecticut addressing what impact a plaintiff's failure to review an insurance policy has on alleging a claim against the insurance broker involve claims that the insurance broker misled the insurance company in procuring insurance. See Pinette v. North American Underwriters, Inc., 1995 WL 519766, at *4 (Conn. Sup. Ct. Aug. 24, 1995). However, in one case before the Superior Court of Connecticut, the court held, without discussion, that a defendant insurance agent was liable for negligently obtaining automobile insurance, and the plaintiff was contributorily negligent for failing to examine annual declarations regarding the policy. See Sipos v. Desel, 1995 WL 785023, at *2 (Conn. Sup. Ct. Dec. 28, 1995).

York case law states that, when a plaintiff requested specific coverage and upon receipt of the policy did not read it and lodged no complaint, "the failure to read the policy, at most, may give rise to a defense of comparative negligence but should not bar, altogether, an action against a broker." American Building Supply Corp. v. Petrocelli Group, Inc., 19 N.Y.3d 730, 736-37 (2012).

The CCIP Participants allege that Aon procured CCIP coverage, and that the excess CCIP policies do not require payment of defense costs, as requested by O&G. Compl. at ¶ 30. This is sufficient to plausibly allege duty and causation. See Ursini v. Goldman, 118 Conn. 554 (1934) (stating that where a broker "undertakes to procure a policy affording protection against a designated risk, the law imposes upon him an obligation to perform with reasonable care the duty he has assumed, and he may be held liable for loss properly attributable to his default"); see also Retirement Program for Employees of the Town of Fairfiled v.NEPC, LLC, 642 F.Supp.2d 92 (D. Conn. 2009) ("Under Connecticut law, 'the test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries.'") (citing Paige v. St. Andrew's Roman Catholic Church Corp., 250 Conn. 14 (1999)). Any argument that the CCIP Participants failed to meet their own obligation to review the policies to ensure they met their needs does not obviate Aon's role in causing the injury. At most it may support a defense of contributory negligence. See American Building Supply, 19 N.Y.3d at 736-37; see also Sipos v. Desel, 1995 WL 785023, at *2 (finding the plaintiffs contributorily negligent, in part, for never examining the insurance declarations sent to them).

C. Breach of Contract

Aon argues that the CCIP Participants fail to state a claim for relief for breach of contract because the Complaint does not contain any allegations that Aon promised to secure a specific result, i.e., that it promised in the contract to provide excess defense costs coverage. See Def.'s Mem. in Supp. Mot. to Dismiss at 15. "Connecticut recognizes a cause of action against an insurance agent for failure to obtain insurance under a theory of either professional malpractice or breach of contract." Erikson Metals Corp. v. McManus, 2008 WL 1734880, at *2 (Conn. Supr. Ct. Mar. 27, 2008) (citing Ursini v. Goldman, 118 Conn. 554, 559-60 (1934)). "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." Allied Sprinkler & Mechanical Systems, Inc. v. Montpelier U.S. Ins. Co., 2012 WL 3264242, at *2 (Conn. Supr. Ct. July 19, 2012) (citing Pelletier v. Galske, 105 Conn.App. 77, 81 (2007), cert. denied, 285 Conn. 921 (2008)).

When bringing a claim against an insurance agent for failure to obtain insurance under a breach of contract theory, the plaintiffs must allege "that they contracted with . . . [the insurance agent] to obtain a particular result." Id. at *4. When "the allegations are couched in terms of the defendant having committed professional negligence in the procuring of the insurance policy issued to the plaintiffs" instead of alleging that "the defendant promised the plaintiff a specific result in obtaining the insurance," the claim for breach of contract should be dismissed. Savoy Linen Services, Inc. v. USI Ins. Servs. of Connecticut, 2010 WL 936893, at *4 (Conn. Supr. Ct. Feb. 9, 2010).

The Complaint does not include allegations that the CCIP Participants contracted with Aon to obtain a specific result.  Although O&G alleges that it requested that Aon provide insurance coverage in accordance with the EPC Agreement, nowhere is that request codified in the Service Agreement between O&G and Aon.  See Def.'s Mem. in Supp. Mot. to Dismiss, Ex. B.   Further, there is no allegation that Aon promised to do so or agreed to the request.  Any prior agreement between the parties is not incorporated into the contract because the Service Agreement includes a merger clause.  The Service Agreement stated:

> "This Agreement, and its exhibits, set forth the entire agreement between the parties as of the date appearing above with respect to the subject matter herein, and merges and supersedes all prior discussions, agreements, and understandings of every kind and nature between the parties, and no party shall be bound by any term or condition with respect to the subject matter, other than as expressly set forth, or provided for, in this Agreement and its exhibits."

Id. at 9.  According to Connecticut law, "[i]n the case of a fully integrated contract, usually manifested by its inclusion of a merger clause, the parties are deemed to have agreed that the terms of their written contract supersede all prior and contemporaneous communications between them.  Under such circumstances, a court may not add additional terms to the contract." Lux v. Environmental Warranty, Inc., 59 Conn. App. 26, 33 n.8 (Conn. App. 2000).  Therefore, such a request cannot form the basis of the CCIP Participants' breach of contract claim.

The CCIP Participants claim that Aon contracted to perform the specific tasks of "develop[ing], recommend[ing], negotiat[ing], and plac[ing] insurance and/or risk financing programs for all CCIP Coverages; . . . negotiate[ing] terms and conditions of the CCIP Coverages . . .; review[ing] the CCIP policies placed by [Aon] to ensure that they [were] accurate as to the insurance coverage terms and policy limits . . .; [and]

16

prepar[ing] . . . a CCIP manual." See Compl. at ¶ 21; see also Pl. Mem. in Opp. Mot. to

Dismiss at 13.  However, this is merely a professional malpractice claim couched as a

contract claim.  See Savoy Linen, 2010 WL 936893, at *4 (stating that the "allegation

that the defendant failed to procure an insurance policy naming the proper insured" was

"couched in terms of the defendant having committed professional negligence in the

procuring of the insurance policy").  These obligations are merely those required of an

insurance broker exercising reasonable care.[5]  Therefore, the breach of contract claim

is dismissed.

    D.  Negligent Misrepresentation

Lastly, Aon argues that the CCIP Participants cannot state a claim for negligent

misrepresentation because they cannot allege that they justifiably relied on any alleged

misrepresentation by Aon.  See Def.'s Mem. in Supp. Mot. to Dismiss at 17.  To state a

claim for negligent misrepresentation under Connecticut law, a plaintiff must show that

the defendant, in the course of his business, profession, or employment, supplied false

information for the guidance of others in their business transactions, which caused them

loss by their justifiable reliance upon the information." See Clouston v. On Target

Locating Services, 2005 WL 2338883, at *6 (D. Conn. Aug. 19, 2005).

The CCIP Participants allege that, "Aon represented to Plaintiffs that it had

procured their defense costs coverage under the CCIP as requested by O&G."  Compl.

---

[5] The CCIP Participants attempt to argue that they may pursue both their negligence and breach
of contract claims because of a New York case allegedly involving similar allegations.  See Pl. Mem. in
Opp. Mot. to Dismiss at 13; see also Bruckmann, Rosser, Sherill & Co., L.P. v. Marsh USA, Inc., 885
N.Y.S.2d 276, 277-78 (App. Div. 2009).  Not only does the Bruckmann court fail to set forth the facts in its
opinion, which prevents this court from determining whether the allegations are akin to those present
here, but it clarifies that the plaintiff alleged a breach of duty independent of the contract to obtain
insurance.  Id. (stating that the negligence claim for failure to exercise due care in reviewing the draft
policy and preparing a binder was separate from the claim for breach of contract to provide requested
coverage).  The same cannot be said in the present case.

17

at ¶ 76.  "Specifically, the CCIP Manual Aon prepared states that the CCIP Excess

Policies 'follow form of [the CCIP Primary Policy] wording (provisions, coverages,

exclusions, etc.)."  Compl. at ¶ 76.  According to the plaintiffs, the CCIP Primary Policy

contained the "proper defense cost coverages in addition to policy limits," id. at ¶ 30,

therefore, the plaintiffs relied on Aon's representations in the CCIP Manual that the

CCIP Excess Policies provided the same coverage.  See id. at ¶ 77.

Aon argues that the CCIP Participants could not have justifiably relied on any

statement in the CCIP Manual because the manual stated that it was only meant as an

outline and that, to the extent the policies differ, those policies govern.  See Def. Mem.

in Supp. Mot. to Dismiss, Ex. F, at 4.  At this stage of litigation—and in spite of some

conflicting case law not binding on this court[6]—the court cannot conclude that the CCIP

Participants have not plausibly alleged a claim for negligent misrepresentation.  The

CCIP Participants alleged that Aon explicitly informed them in the CCIP Manual that

their umbrella policy followed the form of their primary policy, meaning it included

defense costs coverage.  See Compl. at ¶ 76.  A statement that the manual does not

"[p]rovide complete information about coverages and exclusions," see Def. Mem. in

Supp. Mot. to Dismiss, Ex. F, at 4 (emphasis added), does not mean an insured could

not rely on the possibly limited—but still supposedly correct—review of what the

---

[6] Aon relies on a New York state case, KSW Mech. Servs., Inc. v. Willis of N.Y., Inc., 63 A.D.3d
411 (N.Y. App. Div. 1st Dep't 2009), to support its argument that the CCIP Participants have failed to
plead "reasonable reliance."  See Def.'s Mem. in Supp. Mot. to Dismiss at 18.  The KSW court held that
the plaintiff's "fraud claims based on alleged misrepresentations regarding coverage made in a
construction project insurance manual . . . [were] not viable for lack of reasonable reliance as a matter of
law in light of the manual's disclaimers stating that it provides an overview and that the policies alone
govern coverage."  KSW, 63 A.D.3d at 411.

coverage entails.  Therefore, Aon's Motion to Dismiss the CCIP Participants' negligent

misrepresentation claim is denied.

## V.    CONCLUSION

For the foregoing reasons, the Motion to Dismiss (**Doc. No. 24**) is **GRANTED** as

to the CCIP Participants' breach of contract claim.  The Motion to Dismiss is **DENIED** as

to the CCIP Participants' claims for declaratory judgment, negligence, professional

malpractice, and negligent misrepresentation.

**SO ORDERED.**

Dated at New Haven, Connecticut this 29th day of January, 2013.


　　　　　　　　　　　　/s/ Janet C. Hall
　　　　　　　　　　Janet C. Hall
　　　　　　　　　　United States District Judge