# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| O&G INDUSTRIES, INC., KLEEN | ) | |
| ENERGY SYSTEMS, LLC, AND | ) | |
| KEYSTONE MAINTENANCE & | ) | |
| CONSTRUCTION SERVICES, INC., | ) | |
| | ) | |
| Plaintiffs. | ) | |
| | ) | NO. 3:12-CV-00723 (JCH) |
| v. | ) | |
| | ) | |
| AON RISK SERVICES | ) | |
| NORTHEAST, INC., | ) | |
| | ) | |
| Defendant. | ) | MARCH 1, 2013 |

## AON RISK SERVICES NORTHEAST, INC.'S THIRD-PARTY COMPLAINT AGAINST LITCHFIELD INSURANCE GROUP, INC.

Defendant/Crossclaimant Aon Risk Services Northeast, Inc. ("Aon") brings this Third-Party Complaint against third-party defendant Litchfield Insurance Group, Inc., ("Litchfield") and alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for indemnity and contribution, arising out of the placement of insurance coverage for Plaintiff O&G Industries, Inc. ("O&G"), Kleen Energy Systems, LLC ("Kleen"), and Keystone Construction and Maintenance Services, Inc. ("Keystone").

2.      This action was initially commenced by O&G, Kleen and Keystone (and former plaintiff Bluewater Construction, which subsequently withdrew from this action) against Aon, alleging that Aon failed to obtain "defense costs coverage outside limits" in certain policies

placed as part of the Contractor Controlled Insurance Program ("CCIP") requested by O&G to cover its work on the development of a power plant in Middletown Connecticut (the "Project").

3.      Aon denies Plaintiffs' allegations, and contends that its claims are without factual or legal basis.  However, to the extent that O&G's claims are held to be valid, Aon contends that Litchfield, not Aon, is primarily liable for any damages alleged in Plaintiffs' Complaint, and therefore owes duties of indemnity and contribution to Aon.

4.      In particular, Litchfield had for many years been O&G's primary broker, agent and insurance advisor, who not only knew, but helped to draft, the insurance requirements for the project.

5.      The coverage that O&G claims was deficient in relation to the project is the Umbrella Liability coverage described in the EPC Agreement for the project.  That Umbrella Liability coverage was placed by Litchfield and not by Aon.

6.      Moreover, as the broker for O&G's umbrella policies, Litchfield knew or should have known the terms of the CCIP, and reviewed or should have reviewed the CCIP policy documents, in order to allow it to place umbrella coverage that was supposed to sit above the CCIP.

7.      As a result, to the extent that any of O&G's claims have merit, Litchfield is liable for any errors or omissions in O&G's insurance coverage related to the Project.

8.      O&G has also commenced an action in Connecticut state court against Aon and Litchfield, alleging other errors and omissions in the placement of its insurance coverage.

O&Ghas alleged that Litchfield was primarily liable for any errors or omissions, but that Aon is secondarily liable for failing to supervise the work of Litchfield.

9.      On September 5, 2012 Litchfield served an apportionment complaint – a state-law device for asserting apportionment of fault – against Aon, asserting claims for apportionment of fault under Conn. Gen. Stat. § 52-572h and the common law.

10.     Aon believes Plaintiffs' claims in this action, and O&G and Litchfield's claims in the state court action, are baseless.  However, to the extent that Litchfield's claims are valid, then Litchfield owes parallel common law duties under Connecticut law to O&G and Aon with respect to the placement of litigation cost coverage under the CCIP, and therefore is liable under theories of contribution and indemnity.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction under 28 U.S.C. § 1332 because the original parties are of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

12.     Venue in this District is proper under 28 U.S.C. § 1391(a) and (c) because events and omissions giving rise to the controversy occurred in this District, and Defendant transacts business and is subject to personal jurisdiction in this District.

13.     Aon brings this action as a third-party plaintiff under Federal Rule of Civil Procedure 14.

## THE PARTIES

14.     Plaintiff O&G is a corporation organized under the laws of the State of Connecticut, with its principal place of business located in Torrington, Connecticut.

15.     Plaintiff Kleen is a limited liability company organized under the laws of the State of Connecticut, with its principal place of business located in Middletown, Connecticut.

16.     Plaintiff Keystone is a corporation organized under the laws of the State of Massachusetts, with its principal place of business located in Rowley, Massachusetts.

17.     Defendant/Third-Party Plaintiff Aon Risk Services Northeast, Inc. is a corporation organized under the laws of the State of New York, with its principal place of business located in Chicago, Illinois.

18.     Third-Party Defendant Litchfield Insurance Group, Inc., is a corporation organized under the laws of the state of Connecticut, with its principal place of business located in Litchfield, Connecticut.

## FACTUAL BACKGROUND

### Litchfield and the EPC Agreement

19.     On or about November 30, 2007, O&G and Kleen entered into an "Engineering, Procurement and Construction Agreement" (the "EPC Agreement") in connection with the Project.

20.     Litchfield, as a former affiliate of O&G and as its longstanding broker and advisor, consulted with O&G in connection with the EPC Agreement and drafted portions of that document.

21.     In particular, Litchfield drafted the section of the EPC Agreement that sets forth the insurance requirements for the Project, including the terms set out below.

22.     Section 12.1.3 of the EPC Agreement requires O&G to acquire a primary commercial general liability ("CGL") policy with O&G as primary insured and with Kleen, certain financing entities, and their employees and officers as additional insureds, with a $2

million per occurrence limit and $4 million total limit.  This policy was required to include "defense expenses paid in addition to the policy limits."

23.     The EPC Agreement states no requirement for excess coverage over the CGL primary policy.

24.     Section 12.1.5 of the EPC Agreement requires O&G to acquire "Umbrella Liability insurance" that sits above the CGL, Automobile, and Employer's Liability policies that are required under the EPC Agreement, with a total limit of $100 million in umbrella liability coverage.  The Umbrella Liability insurance was required to have, "at minimum, the same terms and conditions" as the underlying policies.

25.     Section 12.2 of the EPC Agreement sets out certain minimum requirements for subcontractor insurance on the Project.  This section requires a $2 million general aggregate limit at the primary level, with excess coverage of $5 million.

26.     Section 12.2 does not mention defense cost coverage.

27.     Under the EPC Agreement, some or all of the required insurance coverage could be provided under a CCIP.

**Litchfield at all Times Remained O&G's Insurance Broker and Advisor.**

28.     In 2007, Litchfield placed the primary and umbrella coverage for O&G pursuant to the EPC Agreement.  Litchfield understood at all times that this coveragewas placed in order to meet the requirements of the EPC Agreement.

29.     Litchfield did not place CCIP coverage for O&G's subcontractors in the period from 2007 to 2008.

30.     In 2009, Litchfield offered to renew the CGL and umbrella coverage it had previously placed for O&G, and also offered to assist O&G in the placement of a $100 million

CCIP for the Project.  Litchfield proposed that the placement itself would be done through CIP, a third-party broker.  On information and belief, Litchfield advised O&G that $100 million in CCIP coverage should be placed in order to track the requirements of the EPC Agreement.

31.     O&G at first worked with Litchfield and CIP to develop a CCIP program. However, ultimately, O&G retained Aon to place the CCIP coverage, rather than Litchfield and CIP.

32.     Litchfield, however, continued to act as broker and agent for O&G as to its own corporate CGL and umbrella coverage, which had been renewed for an additional year.

33.     Litchfield also continued to act as O&G's advisor as to its insurance placement generally.

34.     O&G sought and obtained advice from Litchfield concerning the CCIP during and after the time that Aon was placing it.

35.     Aon was not told that it was required to place litigation cost coverage outside limits at all layers of the CCIP, despite O&G's present assertions that it instructed Aon to place coverage as required under Section 12.1 of the EPC Agreement.

36.     Nor was Aon instructed to follow the EPC Agreement's terms under Section 12.1 of that document in other ways – for instance, Aon was not instructed to place primary coverage at levels of $2 million per occurrence/$4 million aggregate coverage.   Aon instead placed CGL coverage in the amounts of $1 million per occurrence/$2 million aggregate. Neither O&G nor Litchfield advised Aon that such coverage was inadequate or inconsistent with the requirements of the EPC Agreement.

37.     Aon offered to place $100 million in total CCIP Coverage.

38.     O&G refused this proposal in favor of only $50 million in CCIP coverage,

believing that the additional umbrella coverage placed by Litchfield would fulfill the remainder of the $100 million required by the EPC Agreement.

39.     Aon acquired "binders" for the primary and excess policies it placed for O&G, which included identifications of the policy forms to be used in the final placement.

40.     Litchfield reviewed, or should have reviewed, the binders for the CCIP, and knew or should have known the details of the policy forms to be used.

41.     Therefore, Litchfield knew or should have known that the policy forms to be used did not include litigation cost coverage outside limits in the excess policies.

42.     Litchfield did not advise either O&G or Aon that the absence of litigation cost coverage in the excess policies was inadequate, or that it was inconsistent with the EPC Agreement that Litchfield helped draft, or that it needed to be corrected.

43.     Litchfield also relied on the expertise of other brokers, consultants and agents in rendering insurance services to O&G.

**The Aon Service Agreement**

44.     O&G entered into a service agreement with Aon setting forth the parties' respective rights and duties relating to the procurement and administration of the CCIP (the "Service Agreement").

45.     Litchfield advised O&G in the drafting and negotiation of the Service Agreement.

46.     In particular, Litchfield knew or should have known that the Service Agreement obligated O&G to review any policies placed by Aon to ensure that the policies met their requirements.  Litchfield had specific communications with O&G regarding this term of the Service Agreement.

47.     Litchfield, as O&G's primary advisor, knew or should have known the limits of

coverage that O&G was required to maintain in CGL and umbrella coverage for itself and Kleen, as well as the requirements concerning litigation cost coverage under such policies, pursuant to the EPC Agreement – an Agreement that Litchfield drafted in part.

48.     Litchfield further knew, or should have known, the requirements set out in Section 12.1 of the EPC Agreement.

49.     Litchfield therefore knew, or should have known, that the umbrella policies it placed for O&G had to comply with Section 12.1 of the EPC Agreement, not the CCIP policies placed by Aon.

50.     Further, as O&G's long-time principal insurance broker and advisor, Litchfield had a duty to supervise the placement of O&G's insurance coverage for the Project in general, including the placements made by Aon, for the benefit of its long-term client and former affiliate, O&G.

51.     O&G sought and obtained advice from Litchfield regarding Aon's placement of the CCIP, and Litchfield was therefore aware of the terms on which Aon was acquiring coverage.

52.     Litchfield also reviewed or should have reviewed the CCIP policy documents to ensure that they complied with the EPC Agreement's requirements, and so that it could properly place O&G's umbrella coverage. Aon, in contrast, was not contractually obligated to act as O&G's general insurance advisor for non-CCIP matters.  Nor did it have knowledge of the terms of the EPC Agreement, the details of the other policies placed by Litchfield and other brokers for Project participants, or other details of the Project that would enable it to act as such an advisor to O&G on its insurance program in general.

53.     Because Litchfield, rather than Aon, had the duty to supervise placement of

8

Umbrella Liability to ensure compliance with the terms of the EPC Agreement, it is Litchfield, rather than Aon, that is proximately responsible for Plaintiffs' alleged injury in this case.

54.     Therefore, as the entity primarily liable for any injury alleged in Plaintiffs' complaint, Litchfield owes duties of indemnity and contribution to Aon.

**Count I – Indemnity**

55.     Aon repeats and realleges paragraphs 1-54 as if fully set forth herein.

56.     Under Connecticut law, a third-party primarily liable to a plaintiff for injuries in tort owes an obligation of indemnity to other defendants.

57.     As set forth above, Litchfield was negligent in failing to ensure that insurance placed for the Project fit the requirements that Litchfield drafted as part of the EPC Agreement.

58.     Litchfield, unlike Aon, was the sole broker aware of the insurance requirements of the Project.  Litchfield also was aware of the terms of insurance placed by Aon and other brokers.

59.     Litchfield also was the primary broker that placed O&G's commercial general liability coverage, and umbrella coverage over that policy – the sole policies that were subject to Section 12.1 of the EPC Agreement.  Aon had no role in placing this coverage. Thus, Litchfield was in control of the relevant situation, *i.e.,* the procurement of umbrella coverage, to the exclusion of Aon.

60.     Litchfield's active negligence, rather than Aon's conduct (which rises at most to the level of passive negligence), was the direct, immediate cause of Plaintiffs' injuries.

61.     Aon did not know, nor could it have known, that Litchfield was negligent, or that its negligence was the cause of injury to Plaintiffs.

62.     Therefore, Litchfield owes a duty of indemnity to Aon.

**Count II – Contribution**

63.      Aon repeats and realleges paragraphs 1-62 as if fully set forth herein.

64.      Under Connecticut law, Litchfield's negligence and breaches of professional duty were the proximate cause of Plaintiffs' injuries.

65.      Therefore, Litchfield owes Aon duties of contribution.

**WHEREFORE**, Aon seeks:

a) a judgment that Litchfield, rather than Aon, is liable for any injury suffered by Plaintiffs;

b) indemnity and contribution in full of any judgment entered against Aon;

c) costs and attorneys' fees; and

d) such other relief as this Court deems just and proper.

DEFENDANT
THIRD-PARTY PLAINTIFF
AON RISK SERVICES NORTHEAST, INC.


By ___/s/   04181_____
       Richard W. Bowerman, ct04181
       Margaret P. Mason, ct 04157
       LeClairRyan
       545 Long Wharf Drive, 9th Floor
       New Haven, Connecticut 06511
       Tel. No.: (203) 672-3202
       Fax No.: (203) 672-3237
       Richard.bowerman@leclairryan.com

           -- Its Attorneys --


And

Blair Connelly
Paul A. Serritella
Manasi Shanghavi
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Tel No.: (212) 906-1200
Fax No.: (212) 751-4864

Of Counsel

- Its Attorneys -

## CERTIFICATION OF SERVICE

I hereby certify that on March 1, 2013 a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.


        /s/   26561
        Michael G. Caldwell, ct 26561