UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| O&G INDUSTRIES, INC., KLEEN ENERGY SYSTEMS, LLC AND KEYSTONE MAINTENANCE & CONSTRUCTION SERVICES, INC., <br><br> *Plaintiffs*, <br><br> v. <br><br> AON RISK SERVICES NORTHEAST, INC., <br><br> *Defendant/Third-Party Plaintiff*, <br><br> v. <br><br> THE LITCHFIELD INSURANCE GROUP, INC., <br><br> *Third-Party Defendant*. | CIVIL ACTION NO. 3:12-CV-00723 (JCH) <br><br><br><br><br><br><br><br> April 17, 2013 |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THIRD-PARTY DEFENDANT, THE LITCHFIELD INSURANCE GROUP, INC., TO DISMISS

The third-party complaint filed by Aon Risk Services Northeast, Inc. ("Aon") against The Litchfield Insurance Group, Inc. ("LIG"), asserting claims for indemnity and contribution, must be dismissed. Aon's indemnity claim fails because Aon has failed to allege facts making it plausible (1) that Aon only was passively negligent, and (2) that LIG, rather than Aon, was in "control of the situation" giving rise to plaintiffs' claims. Aon's contribution claim fails because it is untimely.

I. FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2012, the plaintiffs initiated suit against Aon, which was the insurance broker that procured for plaintiff O&G Industries, Inc. ("O&G") policies of liability insurance that should have, but did not, provide for defense costs in addition to policy limits. See Complaint; Court's Docket, entry #1. The plaintiffs asserted against Aon state law claims of negligence (Count III), professional malpractice (Count IV), and misrepresentation (Count V).[1] Pertinent facts alleged in the plaintiffs' complaint are as follows.

A. FACTS ALLEGED IN PLAINTIFFS' COMPLAINT

On or about November 30, 2007, O&G and Kleen Energy Systems, LLC ("Kleen") entered into an "Engineering, Procurement and Construction Agreement" ("EPC Agreement") in connection with the construction of a 620 megawatt gas fired power plant ("Project"). Complaint, ¶¶ 1, 9. The EPC Agreement required O&G to secure primary liability coverage and umbrella liability coverage with "[d]efense expenses in addition to the policy limits." Id., ¶¶ 11, 12.

The EPC Agreement provided that some or all of the required insurance coverage could be provided under a Contractor Controlled Insurance Program ("CCIP"). Id., ¶ 13. O&G retained Aon to act as its insurance broker and adviser in the procurement of a CCIP to fulfill O&G's insurance requirements under the EPC Agreement. Id., ¶ 19. To that end, O&G and Aon entered

---

[1] The complaint also alleged a claim for breach of contract (Count II), which this Court (Hall, J.) dismissed on January 29, 2013, and for declaratory judgment (Count I), which is not at issue here.

{00720908.DOCX}2

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361       FACSIMILE (860) 525-4849       JURIS NO. 24029

into a service agreement, providing that Aon would act as O&G's insurance broker and advisor in the procurement of a CCIP for the Project ("Service Agreement"). Id. The Service Agreement required Aon to develop, recommend, negotiate, and procure the CCIP coverage, to review the CCIP policies for accuracy, and to advise O&G of any errors or required changes. Id., ¶ 21.

Aon procured a CCIP for the Project, which consisted of a primary liability policy, and three excess liability policies. Id., ¶¶ 25, 26. Although the primary liability policy procured by Aon included the required defense cost coverage, the excess liability policies procured by Aon did not. Id., ¶ 30 ("The CCIP Primary Policy Aon procured on behalf of the CCIP Participants contains the proper defense cost coverage in addition to policy limits. However, contrary to Aon's representations in the CCIP Manual, the Excess CCIP Policies do not require the payment of defense costs of any sort, let alone defense costs in addition to policy limits").

On February 7, 2010, an explosion occurred at the Project site causing multiple deaths and injuries. Id., ¶ 32. A number of lawsuits were brought against O&G and others as a result. Id., ¶ 33. The claims arising out of the explosion quickly exhausted the CCIP's primary liability coverage, which provided for defense costs. Id., ¶ 38. Once the primary policy was exhausted, O&G began to incur, and will continue to incur, substantial costs defending itself from the claims arising out of the explosion at the Project site. Id., ¶ 39.

O&G alleges that "Aon's acts and omissions in failing to procure Plaintiffs' defense coverage as O&G requested and as the EPC Agreement requires, and in advising Plaintiffs

{00720908.DOCX}3

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361             FACSIMILE (860) 525-4849             JURIS NO. 24029

concerning that coverage, constitute ... negligence, misrepresentation and professional malpractice." Id., ¶ 46.

### B. PROCEDURAL HISTORY PRIOR TO FILING THE THIRD-PARTY COMPLAINT

As set forth above, the plaintiffs initiated this lawsuit solely against Aon on May 15, 2012. See Complaint; Court's Docket, entry #1. On May 21, 2012, Aon was served with the complaint. See id., entry # 15. On May 24, 2012, the affidavit of service of the complaint on Aon was filed with the Court. See id., entry # 15.

On February 26, 2013, Aon filed a third-party complaint against LIG. See id., entry #62. On March 5, 2013, Aon filed a slightly amended third-party complaint. See id., entry # 65. On March 7, 2013, Aon served its amended third-party complaint on LIG. See id., entry # 68. Thus, Aon served its amended third-party complaint on LIG 287 days after the proof of service of the complaint on Aon was filed with the Court.

### C. FACTS ALLEGED IN AON'S AMENDED THIRD-PARTY COMPLAINT

Aon's amended third-party complaint against LIG asserts claims for common law indemnity (Count I) and contribution (Count II). See Third-Party Complaint. Both claims assert rights "under Connecticut law." Id., ¶¶ 56, 64.

It appears that Aon asserts two distinct theories of recovery. First, Aon appears to contend that as O&G's long-time insurance broker, LIG had a duty to supervise Aon's work, and

{00720908.DOCX}4

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

should have caught Aon's error when Aon procured for O&G excess policies of insurance that did not provide for defense costs in addition to policy limits. Id., ¶¶ 4, 47, 50. Second, Aon appears to contend that the "excess" liability policies Aon procured as part of the CCIP did not need to include defense costs, because the EPC Agreement only required "umbrella" liability policies to contain such coverage. See id., ¶¶ 5, 22-24, 53. Aon further alleges that LIG procured the "umbrella" liability policies for the Project, and thus the plaintiffs should have sued LIG for the failure to procure defense costs. See id., ¶ 53. The specific allegations in Aon's third-party complaint are as follows.

On or about November 30, 2007, O&G and Kleen entered into the EPC Agreement. Id., ¶ 19. Section 12.1 of the EPC Agreement required O&G to secure primary liability coverage and umbrella liability coverage with "[d]efense expenses in addition to the policy limits." Id. ¶¶ 22, 24. LIG was aware of this requirement. Id., ¶ 48.

In 2007, LIG procured the liability insurance coverage required by the EPC Agreement. Id., ¶ 28. In 2009, LIG offered to renew the coverage it had procured for O&G, and alternatively offered to procure for O&G a CCIP for the Project. Id., ¶ 30. O&G instead retained Aon to procure the CCIP coverage. Id., ¶ 31. O&G and Aon subsequently entered into the Service Agreement, which set forth those parties' respective rights and duties with regard to the procurement and administration of the CCIP. Id., ¶ 44.

{00720908.DOCX}5

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                FACSIMILE (860) 525-4849                JURIS NO. 24029

A copy of the Service Agreement between O&G and Aon is attached hereto at Tab 1.[2] The Service Agreement provides that O&G shall appoint Aon "as the exclusive broker of record for the CCIP for the Project," and pay Aon $450,000 for its services (in addition to commissions payable to Aon by insurers). Service Agreement, pp. 2-3. Aon in turn agreed to "develop, *recommend*, negotiate, and *place* insurance and/or risk financing programs for all CCIP Coverages." Id., pp. 2, 11 (¶ 1) (emphasis added). Aon also agreed to "review the CCIP policies" in order to "ensure that they are accurate as to the insurance coverage terms and policy limits that Client is purchasing," and to advise O&G "of any errors or required changes to such policies." Id., pp. 2, 11 (¶ 5).

Notwithstanding the fact that Aon was retained to procure the insurance coverage required by the EPC Agreement, Aon did not review the EPC Agreement to determine its insurance requirements. Id., ¶ 52 (second sentence). Aon subsequently procured for O&G a

---

[2] The Court may consider the Service Agreement without converting LIG's motion to dismiss into a motion for summary judgment, as the Service Agreement is incorporated by reference in Aon's third-party complaint at paragraphs 44-46, as well as the plaintiffs' complaint at paragraphs 19-24. See Stuto v. Fleishman, 164 F.3d 820, 826 n. 1 (2d Cir. 1999) (district court's consideration of a document not included with the complaint is permissible on a motion to dismiss because the document was discussed in the complaint, and thus incorporated by reference); Int'l Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) (holding that even where a document is not incorporated by reference in the complaint, the court may nevertheless consider it in a motion to dismiss where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (consideration of documents outside of the complaint on a motion to dismiss is permissible when there is "undisputed notice to plaintiffs of their contents and [the documents] were integral to plaintiffs' claim") cert. den., 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

{00720908.DOCX}6

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

CCIP with excess policies that did not include the defense coverage required by the EPC Agreement. Id., ¶ 41.

After O&G retained Aon to procure the CCIP coverage, LIG continued to act as O&G's insurance broker and advisor. Id., ¶¶ 32, 33. LIG was aware that the EPC Agreement required the policies in the CCIP, procured by Aon, to include coverage for defense costs in addition to policy limits. Id., ¶¶ 20-23. LIG also reviewed, or should have reviewed, the binders for the policies in the CCIP that were procured by Aon. Id., ¶ 40. LIG therefore knew, or should have known, that the excess policies in the CCIP procured by Aon did not include defense expenses in addition to policy limits as required by EPC Agreement. Id., ¶¶ 41, 42. Although not expressly alleged in the third-party complaint, Aon implicitly alleges that LIG should have brought to the attention of O&G the fact that the excess policies procured by Aon in the CCIP did not comply with the EPC Agreement's requirements. See id., ¶¶ 50-52.

Aon alternatively alleges that because the EPC Agreement required O&G's "umbrella" policies to provide defense expenses in addition to policy limits, and because Aon procured "excess" rather than "umbrella" policies for O&G, it did not breach any duty owed to the plaintiff. Id., ¶¶ 5, 22-24, 53. Aon asserts that LIG actually procured the "umbrella" policies required by the EPC Agreement. Id., ¶¶ 6, 48, 49, 52, 53, 59.

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS No. 24029

II. <u>LEGAL ARGUMENT</u>

    A.     <u>LEGAL STANDARD</u>

In considering a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all the allegations contained in the complaint, but need not credit "legal conclusions." <u>See</u> <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009), quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> "'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" <u>Harris</u>, 572 F.3d at 72, quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950.

    B.     <u>AON'S INDEMNITY CLAIM MUST BE DISMISSED BECAUSE AON HAS FAILED TO ALLEGE FACTS THAT, IF TRUE, MAKE IT PLAUSIBLE (1) THAT AON WAS ONLY PASSIVELY NEGLIGENT, AND (2) THAT LIG RATHER THAN AON WAS "IN CONTROL OF THE SITUATION" GIVING RISE TO PLAINTIFFS' CLAIMS</u>

Because Aon seeks indemnity against LIG for plaintiffs' state law negligence claims, state law governs whether indemnity is available. <u>See</u> <u>Crown Theaters, L.P. v. Daly</u>, 331 F.Supp.2d 89, 93 (D. Conn. 2004) (federal court applying Connecticut law to indemnification claim); <u>Perkins Eastman Architects, P.C. v. Thor Engineers, P.A.</u>, 769 F.Supp.2d 322, 326 (S.D.N.Y. 2011) (Federal Rule 14(a) provides the procedural mechanism for impleader; the

{00720908.DOCX}8

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361      FACSIMILE (860) 525-4849      JURIS No. 24029

substance of the action depends on the state's theory of contribution or indemnity). Indeed, Aon specifically alleged its indemnity claim is brought "under Connecticut law." Third-Party Complaint, ¶ 56.

Aon's indemnity claim against LIG must be dismissed unless Aon has alleged sufficient facts making it plausible (1) that LIG was negligent, (2) that LIG's "active negligence," rather than Aon's own "passive negligence," was the "direct, immediate cause" of the plaintiffs' harm, (3) that LIG was "in control of the situation" to the exclusion of Aon, and (4) that Aon did not know of LIG's negligence, had no reason to anticipate it, and reasonably could rely on LIG not to be negligent. See Smith v. New Haven, 258 Conn. 56, 66 (2001). Aon's amended third-party complaint, however, once stripped of its threadbare recitals of the elements of the cause of action and its conclusory statements, fails to allege facts that plausibly satisfy the second and third elements – *i.e.*, that Aon merely was passively negligent, and that LIG exclusively was "in control of the situation" giving rise to plaintiffs' alleged harm.

Active negligence is the "direct, immediate cause of the accident and the resulting injuries." Pouliot v. Paul Arpin Van Lines, Inc., 367 F.Supp.2d 267, 271 (D. Conn. 2005), citing Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 416 (1965). "Passive negligence is generally limited to constructive or technical fault, ... as where an owner of property is held liable for an injury on his property resulting from a dangerous condition caused by another

{00720908.DOCX}9

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                    FACSIMILE (860) 525-4849                    JURIS No. 24029

working on his property." In re Gen. Dynamics Asbestos Cases, 602 F. Supp. 497, 501 (D. Conn. 1984).

Aon was O&G's insurance broker, and Aon alone procured the policies of insurance in the CCIP that the plaintiffs assert should have provided defense costs in addition to policy limits. See Complaint, ¶¶ 25-31; Third-Party Complaint, ¶¶ 39, 41. Because Aon allegedly failed to procure the proper type of insurance, Aon was actively, rather than passively, negligent. See Albany Ins. Co. v. Rose-Tillmann, Inc., 883 F. Supp. 1459, 1467 (D. Or. 1995) (insurance broker that failed to secure proper insurance for its customer was actively negligent and not entitled to indemnity from an underwriting agent; "[the party seeking indemnity] after all, was [the insured's] insurance agent."). Thus Aon's indemnification claim must be dismissed. See Pellechia v. Connecticut Light & Power Co., 139 Conn. App. 767, 776-78 (2012) (power company's failure to deenergize live wire causing plaintiff's decedent's death could constitute "active negligence," while party who failed to alert power company to downed line could be found to be only "passively negligent").

Aon's indemnity claim also must be dismissed on the separate and independent basis that no "reasonable juror could find that [LIG] had exclusive control of the situation." See Skuzinski v. Bouchard Fuels, Inc., 240 Conn. 694, 705 (1997) (granting motion to strike). "The situation" is the condition that allegedly exposed the plaintiffs to harm. See Pellecchia, 139 Conn. App. at 775 ("the situation" is "the dangerous condition that allegedly exposed the plaintiff's decedent to

{00720908.DOCX} 10

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS No. 24029

harm by virtue of such conduct"). Here, the "situation" is the absence of coverage for defense costs in addition to policy limits *in the policies of insurance procured by Aon* for the Kleen project. No reasonable juror could find that LIG had *exclusive* control of this "situation," where Aon, not LIG, procured the policies at issue.

Indeed, O&G retained Aon specifically to place the CCIP coverage, and appointed Aon "as the *exclusive* broker of record for the CCIP for the Project." See Service Agreement, pp. 2, 3 (emphasis added). Aon further agreed to (1) "develop, *recommend*, negotiate, and *place* insurance and/or risk financing programs for all CCIP Coverages," (2) "review the CCIP policies" in order to "ensure that they are accurate as to the insurance coverage terms and policy limits that Client is purchasing," and (3) advise O&G "of any errors or required changes to such policies." Id., pp. 2, 11 (¶¶ 1, 5) (emphasis added). Thus Aon at the very least was partially in control of "the situation." Aon's indemnification claim therefore must be dismissed.

LIG anticipates that Aon will argue in the alternative that LIG must indemnify Aon because LIG, rather than Aon, procured the "umbrella" policies that were required by the EPC Agreement to have defense costs in addition to policy limits. But this is a defense to plaintiffs' claims, not a basis for indemnity from LIG. Again, here the "situation," as alleged by the plaintiffs, is that the excess policies in the CCIP procured by Aon did not have defense coverage. If Aon's position is correct, then Aon will be found not to be liable to the plaintiffs, because Aon will not have breached any duty to plaintiffs. In that event, Aon, as a non-tortfeasor, will have no

{00720908.DOCX} 11

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS No. 24029

right to indemnity from LIG. See Cimino v. Yale University, 638 F. Supp. 952, 958 (D. Conn. 1986) ("The cross-claim must be construed against the background of the complaint, for it is only if the plaintiffs prevail ... that [the defendant] would have any basis for seeking indemnity."). Thus Aon's claim for indemnification on this alternative theory must be dismissed as well.

### B. AON'S CONTRIBUTION CLAIM MUST BE DISMISSED BECAUSE IT IS TIME BARRED

Impleader pursuant to Fed. R. Civ. P. 14 "is proper only when a right to relief exists under the applicable substantive law; if it does not, the impleader claim must be dismissed." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1446 (2010); McMillan v. Equifax Credit Info. Services, Inc., 153 F. Supp. 2d 129, 131 (D. Conn. 2001) ("Rule 14 does not itself provide a third-party cause of action, and impleader is permitted only 'when a right to relief is cognizable under the applicable substantive law.'"). "If, for example, the governing law does not recognize a right to contribution or indemnity, impleader for these purposes cannot be allowed." 6 Federal Practice and Procedure § 1446. Aon specifically alleged its contribution claim is brought "under Connecticut law." Third-Party Complaint, ¶ 64.

At common law, Connecticut originally did not recognize a right of contribution among joint tortfeasors. See Donner v. Kearse, 234 Conn. 660, 666 (1995) ("Prior to October 1, 1986, this state adhered to the rules of joint and several liability with no contribution among joint tortfeasors."); Gomeau v. Forrest, 176 Conn. 523, 525 (1979) ("The common law of this state,

{00720908.DOCX}12

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361                FACSIMILE (860) 525-4849                JURIS No. 24029

unlike that of a number of other jurisdictions, does not permit contribution between joint tortfeasors."). In 1986, the Connecticut legislature for the first time allowed contribution claims (referred to as "apportionment") in certain instances. See Lostritto v. Community Action Agency of New Haven, Inc., 269 Conn. 10, 23-24 (2004). Even then, however, a defendant had no right to bring a contribution claim against a third-party. See Lostritto, 269 Conn. at 24 (2004).

In 1995, the Connecticut legislature passed Conn. Gen. Stat. § 52-102b, allowing for the first time claims to be brought by a defendant against a third-party for apportionment or contribution under certain circumstances. See Lostritto, 269 Conn. at 25. Specifically, Conn. Gen. Stat. § 52-102b provides that a defendant in a civil action may serve a "complaint upon a person not a party to the action who is or may be liable ... for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability." Conn. Gen. Stat. § 52-102b(a). "Accordingly, it is axiomatic that § 52-102b, which gave life to the right to apportionment provided in § 52-572h, also confers rights that did not exist at common law." Lostritto, 269 Conn. at 26.

Critically, the Connecticut legislature determined that a claim for contribution may be brought against a third person only if the party seeking contribution serves its complaint for apportionment "within one hundred twenty days of the return date specified in the plaintiff's original complaint." Conn. Gen. Stat. § 52-102b(a). This "120 day time limitation is a *substantive* limitation" on the right to contribution. Lostritto, 269 Conn. at 26 (emphasis added).

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361            FACSIMILE (860) 525-4849            JURIS No. 24029

Thus, "failure to comply with its requirements prevents a defendant from exercising the right to apportion liability." Lostritto, 269 Conn. at 26.

"Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). As established by the Connecticut Supreme Court in Lostritto, the 120 day time limitation set forth in Conn. Gen. Stat. § 52-102b(a) is substantive rather than procedural, and therefore must be applied by this Court. See Penn. Mfrs. Indem. Co. v. Cintas Fire Protection & Fire Sys. of Springfield, CT, 2012 WL 3779140, at *7 (D. Conn. Aug. 30, 2012) ("Because § 52-102b implicates personal jurisdiction, a claim that does not comply with the statute may be properly dismissed under Fed. R. Civ. P. 12(b)(2)."); Abbate v. Northland AEG, LLC, 788 F. Supp. 2d 50, 54 (D. Conn. 2011) ("Proper service is mandatory and failure to properly serve an apportionment complaint is the basis for dismissal for lack of personal jurisdiction."); Guigliano v. Danbury Hosp., 396 F. Supp. 2d 220, 222 n.3 (D. Conn. 2005) ("A defendant seeking to shift liability to a nonparty must file an apportionment complaint against that person under § 52-102b(a) within 120 days of the return date specified in the plaintiff's original complaint."); Estate of Nobile v. U.S., 193 F.R.D. 58, 61 (D. Conn. 2000) ("By failing to comply with the 120-day service requirement, the [defendant] lost its substantive right to implead [the third-party defendant]," and the contribution claim asserted against the third-party defendant must be dismissed for lack of jurisdiction.).

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

The equivalent of the "return date" referenced in Conn. Gen. Stat. § 52-102b is the date the proof of service is filed with the district court. <u>Penn. Mfrs. Indem. Co.</u>, 2012 WL 3779140, at *7; <u>Abbate</u>, 788 F. Supp. 2d at 54. Here, the affidavit of service of the plaintiffs' complaint on Aon was filed with the Court on May 24, 2012. Aon thereafter had 120 days in which to serve LIG with Aon's third-party complaint seeking contribution. That is, Aon was required to serve LIG with Aon's third-party complaint on or before September 21, 2012. Aon, however, waited until March 7, 2013 to serve its third-party complaint seeking apportionment or contribution – 287 days after Aon was served with the plaintiffs' complaint. Aon's claim therefore was served 167 days too late and, accordingly, must be dismissed.

{00720908.DOCX} 15

GORDON, MUIR AND FOLEY, LLP, ATTORNEYS AT LAW, HARTFORD SQUARE NORTH, TEN COLUMBUS BOULEVARD, HARTFORD, CT 06106-1976
TELEPHONE (860) 525-5361          FACSIMILE (860) 525-4849          JURIS NO. 24029

## CONCLUSION

For the reasons set forth above, Aon's third-party complaint against LIG must be dismissed.

> LITCHFIELD INSURANCE GROUP, INC.
>
> By its attorneys,
>
> /s/ Jon S. Berk
> Jon S. Berk (ct04239)
> GORDON, MUIR & FOLEY, LLP
> Ten Columbus Boulevard
> Hartford, CT 06106
> (860) 525-5361
> jberk@gmflaw.com
>
> /s/ Russell F. Conn
> Russell F. Conn (ct29203)
> Kurt B. Fliegauf (*admitted pro hac vice* pvc06033)
> Alexis P. Theriault (*admitted pro hac vice* pvc06034)
> CONN KAVANAUGH ROSENTHAL PEISCH & FORD, LLP
> Ten Post Office Square
> Boston, MA 02109
> (617) 482-8200
> RConn@ConnKavanaugh.com
> KFliegauf@ConnKavanaugh.com
> ATheriault@ConnKavanaugh.com

810567.3

{00720908.DOCX} 16

## **CERTIFICATION**

I hereby certify that on this 17th day of April, 2013, a copy of the foregoing Memorandum of Law in Support of Motion of Third Party Defendant, The Litchfield Insurance Group, Inc., to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Jon Berk
Jon Berk (Fed. Bar. No. ct04239)
Gordon, Muir and Foley, LLP
10 Columbus Boulevard
Hartford, CT 06106-1976
Telephone: (860) 525-5361
Facsimile: (860) 525-4849
Email: jberk@gmflaw.com

803490.1