| | | |
|---|---|---|
| | : | |
| O&G INDUSTRIES, INC., KLEEN | : | CIVIL ACTION NO. |
| ENERGY SYSTEMS, LLC, KEYSTONE | : | 3:12-CV-723 (JCH) |
| CONSTRUCTION AND | : | |
| MAINTENANCE SERVICES, INC., | : | |
| AND BLUEWATER ENERGY | : | |
| SOLUTIONS, INC. | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | |
| | : | |
| AON RISK SERVICES NORTHEAST, | : | |
| INC. F/K/A AON RISK SERVICES, | : | |
| INC. OF MASSACHUSETTS, | : | |
|     Defendant, | : | |
| | : | |
|     v. | : | |
| | : | |
| LITCHFIELD INSURANCE GROUP, | : | AUGUST 30, 2013 |
| INC., | : | |
|     Third-Party Defendant. | : | |

**RULING RE: MOTION TO DISMISS THIRD-PARTY COMPLAINT (Doc. No. 95)**

## I.   INTRODUCTION

Plaintiffs O&G Industries, Inc. ("O&G"), Kleen Energy Systems, LLC ("Kleen"),

Keystone Construction and Maintenance Services, Inc. ("Keystone"), and Bluewater

Energy Solutions, Inc. ("Bluewater") (collectively "Contractor Controlled Insurance

Program ('CCIP') Participants") brought this suit against defendant, Aon Risk Services

Northeast, Inc. ("Aon") for declaratory judgment, breach of contract,[1] negligence,

professional malpractice, and misrepresentation.  The case involves a dispute over

---

[1] In a Ruling on Aon's Motion to Dismiss the Complaint, the court dismissed the breach of contract claim.  See Ruling (Doc. No. 56) at 15-17.

whether Aon failed to procure for the CCIP Participants insurance coverage that included defense cost coverage in excess of the CCIP policies.

Aon filed a Third-Party Complaint for indemnification and contribution against Third-party Defendant Litchfield Insurance Group, Inc. ("Litchfield)"), which it amended on March 5, 2013.  Am. Third-Party Compl. (Doc. No. 65).  Litchfield brings this Motion to Dismiss the Third-Party Complaint (Doc. No. 95) for failure to state a claim and because, according to Litchfield, Aon's claim for contribution is time-barred.

## II.    STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 129 S. Ct. at 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 213 (2d Cir. 2008). The plausibility standard does not "require[ ] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8." <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 119 (2d Cir. 2010); <u>see</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)"). However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief. As the <u>Iqbal</u> court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." <u>Iqbal</u>, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>Boykin</u>, 521 F.3d at 213 (citation omitted); <u>accord</u> <u>Arista Records</u>, 604 F.3d at 120.

## III.    FACTS

On or about November 30, 2007, O&G and Kleen entered into an "Engineering, Procurement and Construction Agreement ("EPC Agreement") in connection with a construction project in Middletown, Connecticut, entitled "620 MW Combined Cycle Gas Fired Power Project.  Am. Third-Party Compl. ¶ 19.  Pursuant to the EPC Agreement, O&G was required, among other things, to provide insurance to protect O&G from claims arising out of its operations.  Compl. (Doc. No. 1) ¶ 10.  The EPC Agreement required O&G to "maintain commercial general liability insurance on an occurrence basis for damages because of bodily injury, property damage, [and] personal and advertising injury;" obtain "coverage for: . . . [d]efense expenses paid in addition to policy limits;" and obtain umbrella liability coverage "at minimum, with the same terms and conditions as the  . . . Commercial General Liability . . . insurance required by [the EPC] Agreement." Id. at ¶ 11, 12.

Litchfield, as a former affiliate of O&G and as its longstanding broker and advisor, consulted with O&G in connection with, and drafted portions of, the EPC Agreement. Am. Third-Party Compl. ¶ 20.  In particular, Litchfield drafted the section of the EPC Agreement that sets forth the insurance requirements for the construction project, particularly the requirements that (1) O&G acquire primary commercial general liability ("CGL") with a $2 million per occurrence limit and $4 million total limit, including defense expenses paid in addition to the policy limits, as per Section 12.1.3, (2) O&G acquire umbrella liability insurance sitting above the CGL, Automobile, and Employer's Liability polies, with a total limit of $100 million and "at minimum, the same terms and conditions" as the underlying policies, as per Section 12.1.5, (3) O&G obtain a $2 million general

aggregate limit at the primary level, with excess coverage of $5 million, for subcontractor insurance, as per Section 12.2. Id. at ¶¶21-26.

In 2007, Litchfield placed the primary CGL and umbrella coverage for O&G pursuant to the EPC Agreement. Id. at ¶ 28. Litchfield did not place CCIP coverage for O&G's subcontractors in the period from 2007 to 2008. Id. at ¶ 29. In 2009, Litchfield offered to renew the CGL and umbrella coverage it had previously placed for O&G and offered to assist in placing a $100 million CCIP for the project.[2] Id. at ¶ 30. O&G worked with Litchfield to develop a CCIP program, but ultimately retained Aon to place the CCIP coverage. Id. at ¶ 31. Litchfield continued to act as broker and agent for O&G as to its own corporate CGL and umbrella coverage, which had been renewed for an additional year. Id. at ¶ 32. Litchfield was the primary broker that placed O&G's CGL coverage and umbrella coverage over that policy, and Aon had no role in placing that coverage. Id. at ¶ 59.

O&G entered into a Service Agreement with Aon to procure insurance for the project. Compl. ¶ 19; Am. Third-Party Compl. ¶ 44. However, Litchfield continued to act as O&G's advisor as to its general insurance placement. Am. Third-Party Compl. ¶ 33. O&G sought and obtained advice from Litchfield concerning the CCIP during and

_____

[2] In its Opposition to Litchfield's Motion, Aon explains the difference between the O&G Corporate Insurance Program coverage, provided by Litchfield, and the CCIP coverage, provided by Aon. Aon's Mem. in Opp. Mot. to Dismiss (Doc. No. 102) at 7-8. According to Aon, the O&G Corporate Insurance Program "cover[ed] all of O&G's operations, including the Kleen Energy Project," and included a CGL insurance policy, automobile insurance policy, employer's liability insurance policy, a lead umbrella policy, and three excess umbrella policies. Id. at 7. The CCIP coverage "provides centralized, project-specific insurance coverage that covers all or most parties performing work on the project." Id. at 8. According to Aon—again in its Opposition, but not its Third-Party Complaint—the umbrella policies provided by Litchfield through the O&G Corporate Insurance Program would not cover the Kleen Project unless "they were endorsed to sit excess to CCIP Policies." Id. at 12. Because the umbrella coverage in the O&G Corporate Insurance Program contained a "wrap up" exclusion—meaning the policy will not provide coverage for projects covered by centralized, project-specific coverage such as a CCIP—and no endorsement, the umbrella coverage did not apply to the Kleen Project. Id. at n.5.

after the time that Aon placed it.  Id. at ¶ 34.  Litchfield also advised O&G in the drafting and negotiation of the Service Agreement.  Id. at ¶ 45.  Therefore, Litchfield knew or should have known that the Service Agreement obligated O&G to review any policies placed by Aon to ensure that the policies met their requirements.  Id. at ¶ 46.

Aon was never told that it needed to place litigation cost coverage outside limits at all layers of the CCIP as per Section 12.1 of the EPC Agreement.  Id. at ¶ 35.  Aon was also never told to place CGL coverage at levels of $2 million per occurrence and $4 million aggregate.  Id. at ¶ 36.  Aon offered to place $100 million in total CCIP coverage.  Id. at ¶ 37.  O&G refused this proposal, instead opting for $50 million in CCIP coverage.  Id. at ¶ 38.  O&G believed the additional umbrella coverage placed by Litchfield would fulfill the remainder of the $100 million required by the EPC Agreement.  Id.

Aon procured the CCIP for O&G.  Compl. ¶ 25.  The CCIP provided for per occurrence limits totaling $51 million over four policies.  Id. at ¶ 26.  The four policies were: a primary commercial general liability policy with limits of $1 million per occurrence, a first layer commercial excess liability policy with limits of $10 million per occurrence in excess of $1 million, a second level excess liability policy with limits of $15 million per occurrence in excess of $11 million, and a third level commercial excess liability policy with limits of $25 million per occurrence in excess of $26 million.  Id. at ¶ 26.  The primary policy obtained by Aon contains the proper defense cost coverage in addition to policy limits, but the excess CCIP policies do not require payment of defense costs.  Id. at ¶ 30.

Aon acquired binders for the primary and excess policies it placed for O&G, which included identifications of the policy forms to be used in the final placement.  Id.

at ¶ 39.  Litchfield reviewed or should have reviewed the binders for the CCIP, knew or should have known the details of the policy forms to be used, and, therefore, knew or should have known that the policy forms did not include litigation cost coverage outside limits in the excess policies.  Id. at ¶¶ 40-41.  Litchfield did not advise O&G or Aon that the absence of litigation cost coverage in the excess policies was inadequate or inconsistent with the EPC Agreement.  Id. at ¶ 42.

Litchfield also knew or should have known that the umbrella policies it placed for O&G as part of the Corporate Insurance Program had to comply with Section 12.1 of the EPC Agreement, meaning the policies had to include, "at a minimum, the same terms and conditions" as the underlying policies.  Id. at ¶¶ 24, 49.

## IV.  DISCUSSION

Aon brings claims for indemnification and contribution, under Connecticut law, in its Third-Party Complaint against Litchfield.

### A.  Indemnification

"In an action for indemnity . . . one tortfeasor seeks to impose total liability upon another [tortfeasor]."  Miller v. Natchaug Hosp., Inc., 2005 WL 590425, at *3 (Conn. Super. Ct. Feb. 15, 2005) (quoting Bristol v. Dickau Bus. Co., 63 Conn. App. 770, 773 (2001)).  "A party seeking indemnification based on a tort theory of liability must prove that the injury resulted from the active or primary negligence of the party against whom reimbursement is sought."  Williams v. Hoffman/New Yorker, Inc., 923 F.Supp. 350, 352 (D.Conn.1996) (internal quotation marks omitted).  To assert a claim for common-law indemnification, a third-party plaintiff must show that:

"(1) the party against whom the indemnification is sought was negligent; (2) that party's active negligence, rather than the defendant's own passive negligence, was the direct, immediate cause of the accident and the resulting injuries and death; (3) the other party was in control of the situation to the exclusion of the defendant seeking reimbursement; and (4) the defendant did not know of the other party's negligence, had no reason to anticipate it, and reasonably could rely on the other party not to be negligent."

Smith v. City of New Haven, 258 Conn. 56, 66 (2001). Where a tortfeasor can prove each of these elements against another tortfeasor, he is entitled to indemnity as an exception to the general rule that "[o]rdinarily there is no right of indemnity or contribution between joint tort-feasors." Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 412 (1965).

Litchfield argues that Aon has failed to state a plausible claim for indemnification because Aon has failed to allege facts that plausibly meet the second and third elements of its indemnification claim. Litchfield's Mem. in Supp. Mot. to Dismiss (Doc. No. 35) at 8-10.

Before delving into Litchfield's arguments, it is necessary to unpack Aon's theory of liability. This is a difficult task because Aon fails to include many of the facts presented in its Opposition to Litchfield's Motion to Dismiss in its Third-Party Complaint. In essence, it appears that Aon alleges two bases for its indemnification claim against Litchfield: (1) to the extent that the excess policies—obtained by Aon in the CCIP coverage—were supposed to, but did not, include defense expenses paid in addition to policy limits,[3] it was Litchfield who was responsible for the exclusion, see Am. Third-

---

[3] In their Complaint, the plaintiffs allege that, "Aon failed to realize and/or failed to advise Plaintiffs that the Excess CCIP Policies do not provide for the defense costs coverage required under the EPC Agreement." Compl. ¶ 31.

Party Compl. ¶¶ 41-42, and (2) to the extent that the plaintiffs claim Aon failed to obtain, through the CCIP coverage, umbrella policies with the appropriate defense coverage, it was Litchfield's responsibility to obtain the umbrella policies and Litchfield's negligence that led to those umbrella policies not applying to the Kleen Project, id. at ¶¶ 32, 38; Aon's Mem. in Opp. Mot. to Dismiss at 12-13, n.5.

1. Excess Policies Theory

The court will consider the first theory first.  Aon argues that, "O&G relied on Litchfield, not Aon, to ensure that the CCIP Policies complied with the Litchfield-Drafted Insurance Requirements of the EPC," and that, Litchfield's failure to ensure that the policies complied "constituted primary, active negligence that resulted in Plaintiffs' purported injury."  Aon's Mem. in Opp. Mot. to Dismiss at 19.   Litchfield argues that, because "Aon alone procured the policies of insurance in the CCIP that the plaintiffs assert should have provided defense costs in addition to policy limits," Aon was actively, rather than passively, negligent.  Litchfield's Mem. in Supp. Mot. to Dismiss at 10.  As such, according to Litchfield, Aon has failed to plead facts to plausibly state the second element of the indemnification claim.  In addition, Litchfield argues that the Amended Third-Party Complaint does not allege that it had exclusive control of the situation—the third element of an indemnification claim—and, therefore, should be dismissed on that ground as well.  Id.

a. Active versus Passive Negligence

Primary, active negligence is the "direct, immediate cause of the accident and the resulting injuries."  Pouliot v. Paul Arpin Van Lines, Inc., 367 F.Supp.2d 267, 271 (D. Conn. 2005).  "Passive negligence is generally limited to constructive or technical fault,

as where an owner of property is held liable for an injury on his property resulting from a dangerous condition caused by another working on his property." In re General Dynamics Asbestos Cases, 602 F.Supp. 497, 501 (D. Conn. 1984). To allege this second element of an indemnification claim, a third-party plaintiff must not only allege that the third-party defendant is actively negligent, it must also allege facts to plausibly suggest that it is merely passively negligent. See id. ("Even assuming that the United States was guilty of 'active' negligence, it does not follow that the third-party plaintiffs are entitled to indemnification. The third-party plaintiffs manufactured the asbestos products which caused the plaintiffs' injuries; as such, they cannot be considered to have been only passively negligent.").

The allegations in the Amended Third-Party Complaint do not raise a plausible claim that Litchfield was actively negligent and Aon was only passively negligent. Aon alleges that, because Litchfield was knowledgeable regarding the EPC Agreement and served as a general consultant to O&G, it was obligated to inform Aon that the excess policies it procured did not abide by the EPC Agreement.[4] Am. Third-Party Compl. ¶¶ 20, 33-34, 40-41; see also id. at ¶ 50 ("[A]s O&G's long-time principal insurance broker and advisor, Litchfield had a duty to supervise the placement of O&G's insurance

_____

[4] Aon generally alleges that Litchfield was "negligent in failing to ensure that insurance placed for the Project fit the requirements that Litchfield drafted as part of the EPC Agreement." Am. Third-Party Compl. ¶ 57. To the extent that Aon seeks indemnification on the plaintiffs' claim for misrepresentation— in which they allege that Aon represented to plaintiffs that the CCIP excess policies followed form of the CCIP primary policies, meaning they too included defense costs coverage, Compl. ¶ 76, the court concludes that there are no allegations in the Amended Third-Party Complaint to plausibly state that Litchfield was primarily responsible for this misrepresentation. The Amended Third-Party Complaint states that Litchfield should have reviewed the policies to ensure that they complied with the EPC Agreement, not to ensure that they accurately reflected the substance of the coverage actually procured by Aon.

coverage for the Project in general, including the placements made by Aon, for the benefit of its long-term client and former affiliate, O&G.").

The court need not determine whether Aon's allegations plausibly state that Litchfield was "actively" negligent because, if Litchfield's failure to supervise constitutes "active" negligence, the underlying action it failed to supervise—i.e., Aon's procurement of the insurance policy—must also constitute "active" negligence. In re General Dynamics, 602 F.Supp. at 501 (dismissing third party complaint because allegations supporting finding that both parties were actively negligent). If Aon is found liable to O&G—in other words, if Aon is found to have been negligent in procuring the CCIP coverage by failing to obtain defense costs coverage—that negligence was the direct, immediate cause of the resulting injury, i.e., the lack of coverage in the excess policies. Pouliot, 367 F.Supp.2d at 271 (defining active negligence as the "direct, immediate cause of the accident and the resulting injuries"); see also Cimino v. Yale Univ., 638 F.Supp. 952, 959 (D. Conn. 1986) (looking to whether the third-party plaintiff stated a claim for indemnification by asking, if it were held liable on any of the bases for liability alleged in the plaintiff's complaint, it could meet the standards of indemnification).

It may be that, as Aon alleges, it was unaware of the requirements in the EPC Agreement regarding defense cost coverage because O&G never provided Aon with the EPC Agreement.[5]  Am. Third-Party Compl. ¶ 35.  Aon has filed a supplemental briefing citing evidence to support its claims that O&G never intended to satisfy all of the EPC

---

[5] Aon also appears to argue that the EPC Agreement did not require the excess policies to include defense costs coverage, only the umbrella policies.  Am. Third-Party Compl. ¶ 23 ("The EPC Agreement states no requirement for excess coverage over the CGL primary policy); ¶ 26 (Section 12.2 does not mention defense cost coverage).  This argument is also a defense to the plaintiffs' allegations that Aon had a duty to obtain excess policies that included defense costs coverage rather than a claim that Aon was merely passively negligent.

Agreement's requirements through the CCIP and never bothered to send the EPC Agreement to Aon, even after Aon requested a copy. Aon's Suppl. Mem. (Doc. No. 136-1) at 2-3. First, these additional facts and evidence are not included in the Amended Third-Party Complaint and cannot be considered on a Motion to Dismiss. However, second, and more importantly, these facts and evidence do not support a claim that Aon was passively negligent. Instead, they would support a defense to the plaintiffs' underlying claim for negligence against Aon as it would relieve Aon of the duty to obtain such coverage.[6] See Ruling on Mot. to Dismiss at 12 ("The CCIP Participants have pled sufficient facts to plausibly claim that Aon had a duty to obtain defense costs coverage in excess of the primary policy. O&G alleges that it requested that Aon provide the coverage outlined in the EPC, that Aon was aware that the EPC required umbrella/excess liability coverage that included defense costs, that the CCIP Manual prepared by Aon stated that the CCIP Excess Policies followed the form of the CCIP Primary Policy wording—meaning it included the defense costs which were included in the primary policy—and that Aon failed to procure that coverage for the CCIP Participants."). If O&G never told Aon to procure coverage in accordance with the EPC Agreement, Aon would not be "chargeable with some negligence," and, therefore, could not recover under common-law indemnification. Miller, 2005 WL 590425, at *5 ("As long as the plaintiffs were chargeable with some negligence, which they clearly were, and as long as that negligence was not active or primary, . . . the plaintiffs are not

---

[6] Aon seems to argue as much. It states in its Opposition that although "Aon undertook to recommend and place the CCIP coverage, Aon could only do so in a manner that was consistent with its knowledge of O&G's insurance requirements. To the extent that there were additional terms of coverage that O&G was required to have that went beyond Aon's knowledge, it was impossible for Aon to recommend coverage to meet those needs." Aon's Mem. in Opp. Mot. to Dismiss at 27; see generally Aon's Suppl. Mem. in Opp.(Doc. No. 138).

precluded from recovering under common-law indemnification.").  Or, in other words, if Aon did not have a duty to O&G and is not liable for negligence, there is nothing for which Litchfield would need to indemnify Aon.

Because Aon has failed to allege facts to plausibly state the second element of its indemnification claim, based on a theory that the excess policies did not include defense costs, the court need not consider Litchfield's secondary argument that Aon failed to allege facts to plausibly state the third element of its indemnification claim.

2.  Umbrella Policy Theory

With regard to Aon's second theory—that to the extent that the plaintiffs claim Aon failed to obtain, through the CCIP coverage, umbrella policies with the appropriate defense coverage, it was Litchfield's responsibility to obtain the umbrella policies—the parties again dispute whether Aon has plausibly alleged the second and third elements of its indemnification claim.

a.  Active versus Passive Negligence

Aon alleges—with some claims in its Third-Party Complaint and argument in its Opposition to Litchfield's Motion to Dismiss—that Litchfield was responsible for procuring umbrella coverage and that any lack of defense costs coverage in the umbrella policies was due to the primary negligence of Litchfield.  Am. Third-Party Compl. ¶ 59 ("Litchfield also was the primary broker that placed O&G's commercial general liability coverage, and umbrella coverage over that policy—the sole policies that were subject to Section 12.1 of the EPC Agreement.").  Litchfield argues that "this is a defense to plaintiffs' claims, not a basis for indemnity from [Litchfield]."  Litchfield's Mem. in Supp. Mot. to Dismiss at 11.  According to Litchfield, since the "situation" that

led to injury, as alleged by the plaintiffs, was "that the excess policies in the CCIP procured by Aon did not have defense coverage," any argument that it was the umbrella coverage that should have included that coverage, not the excess policies, is a defense to plaintiffs' negligence claims. Id; see also Compl. ¶ 50 ("Had Aon placed the defense costs coverage for the Project as required under the EPC Agreement and as requested by O&G, the Uncovered Defense Costs would be covered under the CCIP Third Excess Policy until that Policy is exhausted through the payment of claims.").

However, the plaintiffs allege that O&G entered into a Service Agreement with Aon to procure insurance for the project through a CCIP and that the CCIP was to include, among other types of insurance coverages, CGL and umbrella/excess liability coverages for the project. Compl. ¶ 20. The plaintiffs allege that Aon acted as their insurance agent and broker with respect to the CGL, umbrella, and excess lines of insurance for the project. Id. at ¶ 23. They further allege that Aon owed them a duty to "advise Plaintiffs in the purchase of their insurance coverage for the Project required under the EPC Agreement" and that Aon "breached its duties to Plaintiffs by failing to advise reasonably Plaintiffs in the purchase of the CCIP." Id. at ¶¶ 65-66. According to the plaintiffs, they "specifically relied upon Aon to ensure that they did not have any deficiency in defense costs coverage." Id. at ¶ 72.

The plaintiffs, therefore, allege that Aon had a duty to advise them as to the purchase of CGL, excess, and umbrella coverage for the project, and it failed to do so. To the extent that Aon argues that Litchfield was responsible for procuring the appropriate umbrella coverage for the project, id. at ¶ 49 ("Litchfield therefore knew, or should have known, that the umbrella policies it placed for O&G had to comply with

Section 12.1 of the EPC Agreement, not the CCIP policies placed by Aon."), the court interprets Aon's argument to be that Aon's failure to advise with regard to the overall purchase of CCIP coverage was merely passive negligence as compared to Litchfield's active negligence in placing the umbrella coverage. Am. Third-Party Compl. ¶ 59 (stating that Litchfield placed the umbrella coverage and Aon played no role in placing this coverage).

These allegations are sufficient at the Motion to Dismiss stage to plausibly state the second element of the indemnification claim. See Maslansky, 2003 WL 1090578, at *2 (stating that failure to train, instruct, supervise, and adequately warn the plaintiff constitute passive negligence). Although the court believes the Amended Third-Party Complaint does not lay out this claim nearly as well as Aon's Opposition, the allegations in the Amended Third-Party Complaint alone are enough to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

b. Control

Moving on to the third element of the indemnification claim on this theory, the court concludes that Aon has also alleged sufficient facts to plausibly allege this element.[7]

For the purposes of common-law indemnification claims, "exclusive control of the situation" is defined as "exclusive control over the dangerous condition that gives rise to

---

[7] It is unclear whether Litchfield argues in its Motion to Dismiss that, on this "umbrella policy theory," Aon has failed to allege facts to support the third element of an indemnification claim, i.e., that the third party defendant had exclusive control of the situation. However, in objecting to Aon's argument regarding the umbrella policies, Litchfield discusses "the 'situation' as alleged by the plaintiffs," and argues that the "situation" is that "the excess policies in the CCIP procured by Aon did not have defense coverage." Litchfield's Mem. in Supp. Mot. to Dismiss at 11. Because it is within the third element of an indemnification claim that the court considers what the "situation" is and whether the third party defendant had control over that situation, the court assumes that Litchfield is arguing that Aon has failed to allege facts to support this third element.

the accident." <u>Pellecchia v. Connecticut Light & Power</u>, 139 Conn. App. 767, 775 (2012) (quoting <u>Skuzinski v. Bouchard Fuels, Inc.</u>, 240 Conn. 694, 706 (1997)). In characterizing this third element, courts have cautioned that there is a distinction between the allegedly negligent conduct and the dangerous condition that allegedly exposed the plaintiff to harm by virtue of such conduct. <u>Id.</u> For example, in <u>Pellecchia</u>, the court distinguished between the allegedly negligent conduct—the third-party plaintiff's failure to call the power company regarding the downed power line—and the dangerous condition—the downed power line itself. <u>Id.</u> (stating that, "[t]he downed line . . . was the condition of danger from which a foreseeable risk of harm to the plaintiff's decedent is claimed to have arisen due to the negligence of both Quinebaug and the power company").

With this rubric in mind, the court concludes that the "dangerous condition" is the absence of coverage for defense costs. It is that condition which led to the plaintiff's injury, <u>i.e.</u>, the substantial costs incurred by the plaintiffs related to defending themselves in actions related to the explosion. Compl. ¶ 39-42. Although the plaintiffs allege in their Complaint that it was the absence of coverage in the CCIP <u>excess policies</u> that caused them harm, <u>id.</u> at ¶ 50, they also allege more generally that, "[h]ad Aon placed the defense costs coverage <u>for the Project as required under the EPC Agreement</u>, Plaintiffs would not have incurred the Settlement and Defense Fund Negotiation Costs relating to efforts to provide defense coverage for themselves," <u>id.</u> at ¶ 51. To the extent that the plaintiffs allege that the harm was caused by the lack of defense costs coverage for the entire Project—and not just within the excess policies—the court concludes that Aon has alleged sufficient facts at the Motion to Dismiss stage

to plausibly state the third element of control.  According to Aon, the umbrella policies were required under the EPC Agreement to include defense costs.[8]  Third-Party Compl. ¶ 59.  Aon alleges that Litchfield was responsible for placing that coverage, not Aon. Id.; see also Pellecchia (stating that "only the power company was responsible for and capable of deenergizing the line).

For these reasons, Litchfield's Motion to Dismiss the indemnification claim is denied.

    B.  Contribution

Aon alleges a claim for contribution "under Connecticut law."  Am. Third-Party Compl. ¶ 64.  The parties argue over whether Aon is alleging a claim for common-law contribution or whether Aon's claim must arise pursuant to section 52-572h of the Connecticut General Statutes.

In Connecticut, "[a]t common law there was no contribution among joint tortfeasors."  Allstate Ins. Co. v. Lerer, *3 (Conn. Super. Ct. Jan. 16, 2001) (citing Donner v. Kearse, 234 Conn. 660, 666 (1989)).  Section 52-572h "alters the common law rule and provides in relevant part: '[I]f the damages are determined to be proximately caused by the negligence of more than one party, each party against whom recovery is allowed shall be liable to the claimant only for his proportionate share of the recoverable economic damages and the recoverable noneconomic damages . . .'"  Id. (citing Conn. Gen. Stat. § 52-572h)).  According to section 52-102b, a defendant in a civil action to which section 52-572h applies may serve a writ, summons, and complaint

---

[8] See EPC Agreement, Section 12.1.5 ("Umbrella Liability insurance shall be written in excess of Contractor's Employer's Liability, Commercial General Liability and Automobile Liability Insurance and also shall be written to drop down and provide primary insurance, including coverage for defense . . .").

on a person not a party to the action who is or may be liable for a proportionate share of the plaintiff's damages. Such complaint shall be served within 120 days of the return date specified in the plaintiff's original complaint. Conn. Gen. Stat. §52-102b(a).

Litchfield argues that, because there was no right to contribution at common law, the only basis by which Aon may assert a claim for contribution is via the apportionment statute. Litchfield's Mem. in Supp. Mot. to Dismiss at 13. Aon argues that a common law right to contribution does exist, citing to Reilly v. DiBianco, 6 Conn. App. 556, 568 (1986). Aon's Mem. in Opp. Mot. to Dismiss at 28. Reilly establishes an exception to the "no contribution" rule, which allows contribution "if the harm is capable of division between and among [defendants] . . . because each defendant has engaged in independent acts of harm." Reilly, 6 Conn. at 568; see also United States v. Yale New Haven Hosp., 727 F. Supp. 784, 787 (D. Conn. 1990) (stating that the Reilly court "was careful to note that . . . [this] principle is limited to those rare cases where the independent acts of two or more persons combine to bring about one injury and one of the actors seeks to isolate his monetary liability by proving the damages arising from his particular involvement in the harm to a plaintiff").

Litchfield argues that Aon has failed to allege facts which would plausibly support a basis upon which to determine which damages arise from Aon's negligence versus Litchfield's negligence. Litchfield's Reply at 6. The court agrees that, given Aon's allegations, it would be difficult to distinguish what harm was caused by Aon's negligence versus Litchfield's negligence. O&G alleges that, had Aon placed the defense costs coverage for the Project as required by the EPC Agreement, Plaintiffs would not have incurred the Settlement and Defense Fund Negotiation Costs relating to

efforts to provide defense coverage for themselves." Compl. ¶ 51. According to Aon, Litchfield should have supervised its work and informed Aon that it needed to procure coverage for defense costs in the CCIP policies. How is the resulting harm—the lack of coverage and the settlement and defense costs—distinguishable from the harm caused by Aon's alleged negligence in failing to procure CCIP excess policies that cover defense costs? Aon also argues that Litchfield was negligent in obtaining appropriate umbrella coverage. Similarly, how is the resulting harm from Litchfield's negligence distinguishable from Aon's alleged negligence in failing to advise with regard to the overall purchase of CCIP coverage?[9]

Although the court questions whether Aon will ultimately be able to prove independent acts of harm, it does not believe that a Motion to Dismiss is the appropriate stage at which to require proof of distinguishable harm. It may be that Aon will be unable to present evidence to distinguish its role from Litchfield's, and the Reilly exception will not apply. However, the court is unwilling to dismiss the Amended Third Party Complaint on that basis at this stage of litigation.

Having found that Aon has alleged a claim for contribution pursuant to the Reilly exception, the court will comment only in passing on the application of sections 52-572h and 52-102b. As Aon points out, section 52-572h states that a defendant may seek contribution "in causes of action based on negligence" seeking recovery for "damages resulting from personal injury, wrongful death or damage to property." Conn. Gen. Stat.

_____

[9] Again, to the extent that Aon is arguing—and says it has evidence proving—that O&G expected it to procure coverage in accordance with the EPC Agreement and that it was Litchfield's obligation to obtain coverage for defense costs, see generally Aon's Suppl. Mem., Aon would not be held liable for the failure to obtain such coverage. The contribution claim is only at issue if Aon is deemed negligent in some capacity for causing the lack of coverage.

§ 52-572h(b)-(c).  The plaintiffs do not seek damages resulting from personal injury, wrongful death, or damage to property.  Therefore, Aon may not bring an apportionment claim pursuant to section 52-572h or 52-102b.[10]  The Calibre Fund, LLC v. BDO Seidman, LLC, (Conn. Super. Ct. Oct. 18, 2010) (stating that, to fall within the ambit of section 520572h, commercial losses must be the result of, or flow from, damage to tangible property or loss of use of the property); National Credit Union Admin. v. Wells Fargo Advisors, LLC, 2011 WL 5910060, at *4  ("In the present action, all alleged losses are purely commercial in nature. Therefore, contribution is not available to third party plaintiff pursuant to Connecticut General Statutes Section 52–572h.").

Because the court concludes that Aon has no basis to bring an apportionment claim pursuant to section 52-572h or 52-102b—and that, instead, its claim lies pursuant to Connecticut common law—the court need not apply section 52-102b(a)'s statute of limitations provision to Aon's third party claim.  Thus, to the extent Litchfield argued its Motion to Dismiss Aon's contribution claim on the basis that the contribution claim was time-barred, the Motion is denied.

V.    CONCLUSION

For the foregoing reasons, Litchfield's Motion to Dismiss (Doc. No. 95) is **DENIED**.  Aon's Motion for Leave to File Supplemental Memorandum (Doc. No. 136) and the corresponding Motions to Seal (Doc. Nos. 137, 141), along with the Motion correcting an error in the supplemental memorandum (Doc. No. 145), are **GRANTED**.

---

[10] Section 52-102b allows defendants to serve apportionment complaint on a third party in "any civil action to which section 52-572h applies.  Conn. Gen. Stat. § 52-102b(a).

**SO ORDERED**.

Dated at New Haven, Connecticut this 30th day of August, 2013.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge