UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| O&G INDUSTRIES INC., et al.<br>　　Plaintiffs, | )<br>)<br>)<br>) | CIVIL ACTION NO.: 3:12-CV-00723 (JCH) |
| v. | )<br>) | September 27, 2013 |
| AON RISK SERVICES NORTHEAST,<br>INC.,<br>　　Defendant/Third-Party Plaintiff, | )<br>)<br>)<br>) | |
| v. | )<br>) | |
| LITCHFIELD INSURANCE GROUP, INC.,<br>　　Third-Party Defendant. | )<br>) | |

**ANSWER AND SPECIAL DEFENSES OF LITCHFIELD INSURANCE
GROUP, INC. TO AMENDED THIRD-PARTY COMPLAINT BY AON RISK
SERVICES NORTHEAST, INC., WITH JURY DEMAND**

Defendant, Litchfield Insurance Group, Inc. ("LIG"), hereby responds to the numbered

paragraphs of the Amended Third-Party Complaint of the defendant, Aon Risk Services

Northeast, Inc. ("Aon"), as follows.

1.　　The amended third-party complaint speaks for itself and is the best evidence of its

precise terms and provisions. To the extent the allegations in paragraph 1 attempt to characterize

or paraphrase the referenced document, LIG denies those allegations in favor of the precise

wording of the document.

2.　　The complaint speaks for itself and is the best evidence of its precise terms and

provisions. To the extent the allegations in paragraph 2 attempt to characterize or paraphrase the

referenced document, LIG denies those allegations in favor of the precise wording of the

document.

3.      LIG is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 3, and accordingly, denies them. Otherwise denied.

4.      LIG admits that it was O&G's insurance broker for many years, and that it assisted in the drafting of the section of the EPC Agreement setting forth O&G's insurance requirements for the Project. Otherwise denied.

5.      Denied.

6.      Denied.

7.      Denied.

8.      LIG admits that O&G has commenced an action in Connecticut state court against Aon and Litchfield. The state court complaint speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 8 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

9.      LIG admits that on or about September 5, 2012, it served in the state court action an apportionment complaint asserting claims against Aon. The apportionment complaint speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 9 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

10.     Denied.

11.     Paragraph 11 comprises legal conclusions to which no response is required.

12.     LIG admits it transacts business in this District. Paragraph 12 otherwise comprises legal conclusions to which no response is required.

2

13.     Paragraph 13 comprises legal conclusions to which no response is required.

14.     On information and belief, LIG admits the allegations in paragraph 14.

15.     On information and belief, LIG admits the allegations in paragraph 15.

16.     LIG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16.

17.     On information and belief, LIG admits the allegations in paragraph 17.

18.     Admitted.

19.     Admitted.

20.     LIG admits that it was O&G's insurance broker for many years, and that it assisted in the drafting of the section of the EPC Agreement setting forth O&G's insurance requirements for the Project. Otherwise denied.

21.     LIG admits that it assisted in the drafting of the section of the EPC Agreement setting forth O&G's insurance requirements for the Project. Otherwise denied.

22.     The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 22 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

23.     The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 23 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

24.     The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 24 attempt to characterize or

3

paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

25.     The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 25 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

26.     The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 26 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

27.     The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 27 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

28.     LIG admits that in 2007, it procured certain insurance policies for O&G, and that LIG expected that these policies would provide coverage for O&G's operations, including the Project, according to their terms and conditions, and subject to their exclusions. LIG further asserts that the insurance procured by LIG satisfied O&G's insurance requirements under the EPC Agreement prior to Aon's procurement of a CCIP for the Project. The insurance policies LIG procured, however, were *not* specific the Project. Otherwise denied.

29.     Admitted.

30.     LIG admits that in and prior to 2009, it worked with O&G and a third-party broker known as CIP to procure a CCIP specific to the Project with limits of $100 MM. LIG

4

further admits that in April, 2009, it offered to renew the CGL and umbrella policies it previously had procured for O&G, which were *not* specific to the Project. LIG admits that on or about February 5, 2008, LIG sent O&G an e-mail concerning the $100 MM limit, which e-mail speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 30 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document.

31.    Admitted.

32.    LIG admits that it continued to act as O&G's insurance broker with regard to O&G's CGL and umbrella policies, which had been renewed for an additional year, and which were *not* specific to the Project. Otherwise denied.

33.    LIG admits it continued to act as O&G's insurance broker, but not with respect to the CCIP procured by Aon for the Project. LIG also admits that from time to time, it provided advice as requested by O&G. Otherwise denied.

34.    LIG admits that during and after Aon's procurement of the CCIP, LIG noted to O&G certain errors made by Aon. Otherwise denied.

35.    LIG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35, and accordingly, denies them.

36.    The EPC Agreement speaks for itself and is the best evidence of its precise terms and provisions. To the extent the allegations in paragraph 36 attempt to characterize or paraphrase the referenced document, LIG denies those allegations in favor of the precise wording of the document. LIG denies that the insurance procured by Aon was not intended to provide the insurance required by the EPC Agreement. Further answering, LIG states that it never was asked to advise, and therefore did not advise, Aon whether the insurance that Aon procured for O&G

was adequate or consistent with the EPC Agreement. LIG otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 concerning O&G, and accordingly, denies them. Otherwise denied.

37.     LIG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37, and accordingly, denies them.

38.     LIG denies that either Aon or O&G reasonably expected that the umbrella coverage procured by LIG for O&G's operations generally would provide coverage excess of the CCIP. To the contrary, both Aon and O&G knew or should have known that the umbrella policy, as is typical, contained a so-called "wrap exclusion" that would exclude such coverage. LIG otherwise is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38, and accordingly, denies them.

39.     LIG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39, and accordingly, denies them.

40.     Denied.

41.     Denied.

42.     LIG denies the implication in these allegations that it was asked by O&G or Aon to assess whether the CCIP procured by Aon for the Project contained defense cost coverage, or otherwise was adequate to meet the requirements of the EPC Agreement. To the contrary, this was Aon's and O&G's responsibility. LIG further states that a reasonable insurance broker in Aon's position, consistent with good practice and the requirements of Aon's contract with O&G, should have requested and insisted upon receiving a copy of the EPC Agreement prior to procuring the CCIP for the Project so that it could make certain the CCIP it procured – as specific to the Project – would meet the contractual requirements for insurance as set forth in the

EPC Agreement. LIG otherwise admits it did not advise Aon or O&G of Aon's error, as it was not aware of that error. Otherwise denied.

43.    LIG admits that on it occasion it consulted with others in rendering services to O&G. Otherwise denied.

44.    LIG is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, and accordingly, denies them.

45.    LIG admits it reviewed a draft of the Aon Service Agreement and made comments to O&G concerning the Agreement. Otherwise denied.

46.    LIG admits the draft Service Agreement it reviewed required O&G to review the policies procured by Aon, and that LIG noted that fact in one or more communications with O&G. Otherwise denied.

47.    LIG admits it was aware of the insurance requirements in the EPC Agreement, that it assisted in the drafting of the section of the EPC Agreement setting forth O&G's insurance requirements for the Project, and that it procured policies for O&G that met the EPC Agreement's insurance requirements. Further answering, LIG states that upon Aon's solicitation, O&G decided to procure a CCIP from Aon for the Project. Both O&G and Aon knew or should have known that the CCIP displaced the coverage provided in the umbrella policy due to the so-called "wrap exclusion." LIG further states that a reasonable insurance broker in Aon's position, consistent with good practice and the requirements of Aon's contract with O&G, should have obtained a copy of the EPC Agreement prior to procuring the CCIP for the Project, so that it could make certain the CCIP it procured – as specific to the Project – would meet the contractual requirements for insurance as set forth in the EPC Agreement. Otherwise denied.

48.    LIG admits it was aware of the insurance requirements in the EPC Agreement.

49.     Denied.

50.     Denied.

51.     LIG admits that during and after Aon's procurement of the CCIP, LIG noted to
O&G certain errors made by Aon. Otherwise denied.

52.     Denied.

53.     Denied.

54.     Denied.

Count One

55.     LIG repeats its responses to Aon's allegations above as if fully set forth herein.

56.     The allegations in paragraph 56 constitute legal conclusions to which no response
is required.

57.     Denied.

58.     LIG admits that it was aware of the insurance requirements in the EPC
Agreement. Otherwise denied. LIG further states that a reasonable insurance broker in Aon's
position, consistent with good practice and the requirements of Aon's contract with O&G, should
have obtained a copy of the EPC Agreement prior to procuring the CCIP for the Project. Aon's
allegation here that it was not "aware of the insurance requirements of the Project," in the
context of its having procured a CCIP specific to the Project, is an admission of negligence.

59.     LIG admits it procured a commercial general liability policy and umbrella
policies for O&G, and that Aon did not procure those polices.   These policies were not specific
to the Project.  Otherwise denied.

60.     Denied.

61.     Denied.

62.    Denied.

Count Two

63.    LIG repeats its responses to Aon's allegations above as if fully set forth herein.

64.    Denied.

65.    Denied.

SPECIAL DEFENSES

LIG asserts the following defenses with regard to Aon's allegations. Nothing herein may be construed to suggest that LIG bears the burden of proof on any of the issues set forth below.

FIRST SPECIAL DEFENSE

Aon's claims are barred, in whole or in part, because they fail to state a claim upon which relief may be granted.

SECOND SPECIAL DEFENSE

Aon's claim for indemnity is barred, in whole or in part, because Aon was actively negligent and partly in control of the situation giving rise to O&G's alleged harm.

THIRD SPECIAL DEFENSE

Aon, in undertaking to advise O&G with respect to purchasing a CCIP for the Project, had the duty, in the exercise of reasonable care, and according to Aon's contract with O&G, to understand fully the insurance requirements for the Project, as set forth in the EPC Agreement. Aon's repeated allegations that it did not know, or was "unaware of," those requirements, prior to procuring the CCIP, is an admission of negligence that, by itself, defeats any right to common law indemnity.

FOURTH SPECIAL DEFENSE

Aon's claims are barred, in whole or in part, by the statute of limitations.

9

FIFTH SPECIAL DEFENSE

Aon's so-called "contribution" claims are barred because they were not brought within the 120 day period set forth in § 52-102b(a) of the Connecticut General Statutes.

SIXTH SPECIAL DEFENSE

Aon's claims are barred, in whole or in part, by the doctrines of estoppel, laches, waiver, release, ratification, and/or assumption of the risk.

SEVENTH SPECIAL DEFENSE

Aon's claims are barred, in whole or in part, to the extent Aon has unclean hands, including, *inter alia*, from engaging in unlawful, inequitable, or improper conduct, or otherwise proceeding in bad faith.

EIGHTH SPECIAL DEFENSE

Aon's cross claims are barred, in whole or in part, to the extent Aon is precluded under applicable law from recovering, *inter alia*, attorneys' fees or such other relief requested by Aon.

NINTH SPECIAL DEFENSE

Aon's claims are barred, in whole or in part, by the doctrine of judicial estoppel.

TENTH SPECIAL DEFENSE

LIG has insufficient knowledge or information upon which to form a belief as to whether it may have additional special defenses that govern the claims asserted by Aon. LIG therefore reserves the right to raise additional defenses as appropriate.

JURY DEMAND

LIG claims a trial by jury on all issues in this action.

LITCHFIELD INSURANCE GROUP, INC.

By its attorneys,


/s/ Russell F. Conn
Russell F. Conn, ct29203
Kurt B. Fliegauf (Mass. BBO# 564329)
Admitted *pro hac vice*
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
(617) 482-8200
rconn@ckrpf.com
kfliegauf@ckrpf.com


CERTIFICATION

I hereby certify that on the 27th day of September, 2013, a copy of the foregoing Answer was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ Russell F. Conn
Russell F. Conn, ct29203
CONN KAVANAUGH ROSENTHAL
 PEISCH & FORD, LLP

871238.1