**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| O&G INDUSTRIES, INC., KLEEN ENERGY SYSTEMS, LLC, AND KEYSTONE CONSTRUCTION AND MAINTENANCE SERVICES, INC., <br><br> Plaintiffs, <br><br> VS. <br><br> AON RISK SERVICES NORTHEAST, INC. F/K/A AON RISK SERVICES, INC. OF MASSACHUSETTS, <br><br> Defendant, <br><br> VS. <br><br> THE LITCHFIELD INSURANCE GROUP, INC. <br><br> Third Party Defendant. | Civil Action No. 3:12-CV-00723 (JCH) <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> DECEMBER 30, 2013 |

## JOINT STATUS REPORT OF COUNSEL

Pursuant to the Court's June 18, 2013 Scheduling Order Regarding Case Management Plan and July 30, 2013 Order, Plaintiffs/Counterclaim Defendants O&G Industries, Inc. ("O&G"), Kleen Energy Systems, LLC ("Kleen") and Keystone Construction and Maintenance Services, Inc. ("Keystone") (collectively, "Plaintiffs"), Defendant/Counterclaimant/Third-Party Plaintiff Aon Risk Services Northeast, Inc. of Massachusetts ("Aon"), and Third-Party Defendant The Litchfield Insurance Group, Inc. ("Litchfield" and, together with Plaintiffs and Aon, the "Parties") hereby submit their Joint Status Report of Counsel.

**Scheduling and Other Matters**

    Aon's Position

The facts giving rise to this action have radically changed to the point that continued litigation of this case is a waste of every party's time and resources. Not only has it become abundantly clear that Plaintiffs have no case on the merits, Plaintiffs have recently disclosed information showing they have no damages. Aon has only uncovered these facts after endless months of discovery battles, and only after O&G was threatened with dismissal sanctions. O&G continues to withhold vast quantities of relevant documents, creating even more expense in this meritless case.

Plaintiffs' theory of liability is that Aon failed to place the correct insurance coverage for Plaintiff O&G, including coverage for defense costs, which has resulted in Plaintiffs' having to incur defense costs in connection with certain lawsuits. Aon has denied those claims for a variety of reasons, only two of which are enumerated here. First, as described in the Court's Ruling re: Motion to Dismiss Third-Party Complaint [Doc. No. 147], filed August 30, 2013, the requirement in the EPC Agreement that O&G obtain defense cost coverage in addition to policy limits applies to the "umbrella liability insurance sitting above the CGL . . . policies," which *Litchfield* procured for O&G, and not the CCIP excess policies, which Aon procured for O&G. *See* Op. at 4-5, 11 n.5. Second, O&G *never requested* that Aon procure litigation cost coverage outside limits at all layers of the CCIP. *See* Op. at 6. Nor did O&G ever give Aon the EPC Agreement setting forth this alleged insurance requirements, even though Aon requested a copy of that agreement. *See* Op. at 11-12. O&G has never disputed these facts despite repeated opportunities.

But even if Plaintiffs could establish that Aon had some obligation to procure this defense cost coverage for O&G, Aon has asserted affirmative defenses that negate Plaintiffs' ability to recover damages, including, but not limited to, Plaintiffs' failure to mitigate their damages and Plaintiffs' contributory negligence. In particular, Aon claims that other insurance policies were available to cover Plaintiffs' defense costs; however, Plaintiffs failed to take full advantage of those insurance rights and/or bargained them away.

Since at least March 2013, Aon has been engaged in discovery disputes with O&G concerning O&G's obligation to produce relevant documents, including Plaintiffs' communications with insurers regarding the defense costs that Plaintiffs seek to recover from Aon. Aon had to seek the Court's intervention *three times* just to get O&G to make a meaningful document production. When O&G finally produced the 78,000+ documents it had been withholding for eleven months, it also produced a 7,000+ entry privilege log listing the documents that O&G is still concealing from Aon -- many of which are facially not privileged.[1] O&G still refuses to produce all of its communications with its insurers, claiming that they are protected under Connecticut's "mediation privilege," which does not apply in this case. The fact that O&G (1) decided to initiate this action against Aon claiming reimbursement of its defense

---

[1] For example, Ken Merz, Corporate Secretary for O&G, is the individual most knowledgeable about the facts giving rise to Plaintiffs' claims: he was the key O&G individual responsible for all of the insurance at issue in this litigation, and he directed both Aon and Litchfield in procuring this insurance for O&G. O&G has withheld all substantive, post-explosion documents involving Ken Merz on attorney-client privilege grounds because, in 1982, Mr. Merz received a law license. <u>Mr. Merz is not in-house or outside counsel for O&G, nor has he ever held that title during his 40 years at O&G.</u> O&G employs both in-house <u>and</u> outside counsel, and the withheld communications do not copy any of those *actual* attorneys for O&G. Yet O&G is withholding them, on the theory that Mr. Merz suddenly became O&G's legal advisor the day after the explosion (even though they already had someone else holding that job). Adding insult to injury, O&G's privilege logs do not always specify the identity of the relevant "counsel" copied on the document, making it impossible to quantify how many documents O&G has withheld on this facially absurd ground.

3

costs and (2) has continually refused to produce relevant documents, including documents addressing those very defense costs, is incomprehensible. O&G is attempting to use the mediation privilege as both a sword and a shield, claiming damages based on those settlements yet preventing the party it sued from making any inquiry into them.

More incomprehensible, however, is why Plaintiffs continue to prosecute this case despite O&G's disclosure <u>that it has no damages in this litigation</u> because <u>another insurer has agreed to pay the very defense costs that O&G seeks to recover from Aon</u> -- a fact that O&G knew as early as December 2012 for certain defense costs and June 2013 for the remainder of its defense costs. In other words, O&G knew this <u>nearly the entire time that Aon was fighting with O&G, and seeking the Court's intervention, to get O&G to produce its documents.</u> Furthermore, O&G subsequently disclosed that the same insurer, National Union Fire Insurance Company of Pittsburgh PA (a Chartis entity) ("National Union"), has agreed to pay Keystone's defense costs. As a result, <u>neither O&G nor Keystone has any damages in this action</u>. O&G and Keystone hid this fact from Aon -- and from the Court -- for *months* while Aon spent significant resources defending against this litigation.

With respect to the third Plaintiff, Kleen, Aon has learned that O&G required Keystone to exhaust a primary commercial general liability policy that would have provided defense cost coverage for all three Plaintiffs, <u>including Kleen</u>, in order to settle an arbitration between O&G and Keystone. In other words, O&G and Keystone *voluntarily relinquished* the defense cost coverage available to Kleen (and O&G and Keystone) under Keystone's policy to resolve claims exclusively between Keystone and O&G. O&G received a million dollars from Keystone's insurer in return for giving up that defense coverage. Instead of pursing such coverage, Plaintiffs

4

have continued this baseless litigation against Aon while, at the same time, concealing from Aon the documents regarding these critical facts.

Perhaps O&G is continuing this litigation to impose costs on Aon and thereby gain some sort of leverage. Perhaps O&G is continuing this litigation to obtain discovery from Aon and Litchfield for use in the state court action. Perhaps O&G hoped to obtain a double recovery (before the Court required O&G to make the supplemental disclosure that revealed National Union's coverage position). Whatever O&G's motivation may be, this case should not proceed.

Aon and O&G have attempted to negotiate a settlement over the past few months, without success. Aon respectfully requests that the Court schedule a conference with all parties to discuss why this case continues to be litigated in light of the facts that two of three Plaintiffs have no damages whatsoever, O&G and Keystone voluntarily relinquished defense cost coverage for the third Plaintiff, Plaintiffs' liability claims lack merit, and Kleen's claim for defense costs -- even if it were meritorious -- does not exceed the continued cost of litigation.

O&G's Position

Aon's position concerning "scheduling and other matters" is misleading, riddled with inaccuracies, and wholly inappropriate for a "status report." Since Aon has raised these issues, however, O&G is compelled to respond.

First, the merits of O&G's claims against Aon are sound. Aon was retained to procure a CCIP for the Kleen project. The EPC Contract, which governed the terms of the insurance to be procured, called for $100 million of liability coverage, with defense costs outside of policy limits[2] in all layers of such coverage. Aon knew or should have known of the EPC Contract's

---

[2]  Meaning, defense cost payments would not erode indemnity limits.

insurance requirements.  The evidence demonstrates that Aon must have known that defense costs outside policy limits were required in all layers of liability coverage, because Aon misrepresented to O&G and the rest of the CCIP participants, in the CCIP Manual Aon drafted, that all layers of the CCIP contained defense costs coverage outside of policy limits.

Second, Aon's contention that O&G failed to mitigate its damages also is meritless.  With the recent exception of subcontractor WorleyParsons' commercial general liability insurance company, National Union, no other insurance company, including the Keystone insurer to which Aon refers above, agreed to defend O&G or Kleen prior to the exhaustion of the CCIP.  O&G notified Aon of National Union's present agreement to defend O&G under a reservation of rights promptly after National Union actually made a payment to O&G for past defense costs.  Prior to that event, O&G had no assurance that National Union would actually pay its defense costs.

In short, while O&G's defense costs are currently being paid by National Union, Kleen's defense costs, for which O&G is indemnifying Kleen, remain uncovered by any insurance.

Third, Aon's contention that it and O&G have been engaged in discovery disputes since March 2013 is misleading.  O&G and Aon agreed to table certain discovery disputes between them while the parties discussed settlement.  While those settlement talks are continuing, the parties just recently (i.e., within the last two weeks), have resumed their meet and confer discussions in light of the impending April 1, 2014 discovery end date.  On Friday, Aon filed a number of motions to compel against O&G, and requested a conference to discuss a briefing schedule for its motions.  O&G also requests such a conference.

Fourth, Aon's claim that O&G is withholding documents is belied by its acknowledgment that O&G produced 78,000+ documents in this case.  Putting aside the wholly

6

irrelevant nature of the mediation communications Aon seeks to discover, Aon inexplicably refuses to recognize the well-established mediation privilege under Connecticut law.  Aon also baselessly asserts that Ken Merz's post-Incident communications with O&G employees should not qualify as attorney/client communications.  In this regard, and without any basis whatsoever, Aon mischaracterizes Mr. Merz's role at O&G.  As O&G previously advised Aon, Mr. Merz <u>always</u> has had two roles at O&G, one of corporate secretary and one of legal advisor.  In favor of a more comprehensive production, however, for all relevant pre-Incident communications, O&G wholly disregarded Mr. Merz's legal advisor role and treated his internal communications as though he was not an attorney, thereby effectively waiving the attorney/client privilege for pre-Incident communications.  After the Incident, Mr. Merz spent the majority of his time dispensing legal advice to O&G employees for various matters that arose out of the Incident, and O&G was not willing to waive the privilege for Mr. Merz's internal communications during this period.

Fifth, Aon's rank speculation concerning why O&G continues to prosecute this case makes little sense.  Both sides are continuing to incur costs in the prosecution of this case, and thus it is not clear what "leverage" Aon hypothesizes O&G has to gain.  Moreover, any discovery O&G might need from Aon and/or Litchfield in the state court action can be obtained by O&G from Aon and/or Litchfield in that action.  Finally, Aon's supposition that O&G hoped for a double recovery is simply absurd.

If any party has demonstrated improper motives in the conduct of this action, it is Aon.  Aon correctly points out that, currently, the damages at issue in this case likely no longer exceed

the continued costs of litigation.[3]  Cognizant of this fact, Aon has embarked on a discovery campaign to bleed O&G dry by raising every conceivable discovery objection, whether meritorious or not.  This case involves a <u>single</u> insurance placement in the spring of 2009.  O&G has produced over <u>78,000 documents</u>.  Not satisfied, Aon contends O&G is withholding documents and has filed six motions to compel against O&G.  Aon's clear motivation is to compel O&G to drop its claims by burying it in a mountain of contrived discovery disputes.  In light of O&G's production of over 78,000 documents and the economic realities of this case, Aon's war of attrition should not be countenanced by this Court.

Prior to filing this action, O&G proposed an extension of a tolling agreement previously agreed to between O&G and Aon, specifically so that both sides would have some certainty as to the damages at issue before having to litigate the case.  Aon refused.  Now, Aon complains that it does not understand why the case continues to be litigated in light of the remaining damages at issue.  Like Aon, O&G also would like a conference with Your Honor to discuss that issue and the motions to compel recently filed by Aon.

<u>Kleen's Position</u>

Kleen disputes the contentions that its claims are without merit.  Kleen has paid, and continues to pay, significant legal costs in connection with the defense of the bodily injury claims brought against it.  Moreover, Kleen was not involved in the relinquishment of the primary commercial general liability policy discussed above.  Kleen does, however, agree that this case is ripe for settlement, and hopes to work with Aon to achieve such a result.

---

[3]  It should be noted, however, that the defense cost damages at issue in this case are continuing, since the CCIP has not yet been exhausted.

**Dispositive Motions**

Since discovery has not yet been completed, it is difficult for the Parties to assess at this time whether dispositive motions will be made. Currently, however, each Party believes it is likely that it will file a motion for summary judgment as to issues of liability in this case.

**Pleadings**

Plaintiffs' Complaint in this action was filed on May 15, 2012. On January 29, 2013, the Court granted in part and denied in part Aon's Motion to Dismiss Plaintiffs' Complaint. Consequently, Aon served its Answer, Affirmative Defenses, and Counterclaim for Declaratory Judgment on February 12, 2013. Plaintiffs served their Responses and Affirmative Defenses to Aon's Counterclaim on March 28, 2013 and March 29, 2013.

On March 7, 2013, Aon served its Third Party Complaint against Litchfield. On August 30, 2013, the Court granted in part and denied in part Litchfield's Motion to Dismiss Aon's Third-Party Complaint. Litchfield served its Answer and Affirmative Defenses on September 20, 2013.

No amendments to pleadings presently are contemplated.

**Discovery**

Aon's Position

On September 19, 2012, Plaintiffs jointly served document requests on Aon, and O&G served interrogatories on Aon. Aon served its written responses to the document requests and interrogatories on October 19, 2012. Aon also has produced privilege and redaction logs in connection with its productions.

Aon has served four sets of document requests on O&G. Per the Court's July 30, 2013 Order, O&G completed its production on August 26, 2013 for documents requested prior to that

date. Aon has reviewed these documents, the vast majority of which it received in August. O&G has also produced privilege logs comprising nearly 700 pages, the vast majority of which Aon also received in August. Aon and O&G have met and conferred, without success, regarding discovery disputes. In particular, Aon has sought Magistrate Judge Fitzsimmons' intervention regarding O&G's responses to Aon's Fourth Set of Requests for Production, O&G's responses to Aon's Second Set of Interrogatories, O&G's assertions of privilege over vast swaths of non-privileged evidence, and O&G's refusal to produce documents regarding the settlement of claims arising out of the incident giving rise to this lawsuit.

Aon has served three sets of document requests on Kleen. In response, Kleen has produced 2,217 documents. Kleen also has produced two privilege logs.

Aon has served three sets of document requests on Keystone. Keystone responded to Aon's Third Set of Requests for Production of Documents thirty days late, on October 23, 2013, and refused to produce any documents requested by Aon. Keystone has produced a total of 152 documents to date. Only 23 of those documents are electronic root documents, and none of Keystone's electronic documents comply with the parties' stipulated agreement regarding electronically stored information. Keystone has not produced a privilege log. Aon and Keystone have met and conferred regarding these issues without success, and Aon has sought Magistrate Judge Fitzsimmons' intervention regarding Keystone's responses to Aon's Third Set of Requests for Production of Documents, the improper format of Keystone's document production, and Keystone's failure to produce a privilege log.

Aon has served two sets of document requests on Litchfield. Litchfield has produced 4,729 documents to date. Litchfield also has produced a privilege log and redaction log, both of

which Aon has reviewed.  Aon and Litchfield are meeting and conferring regarding Litchfield's privilege log.

Aon is working collaboratively with the other parties to schedule depositions for this matter.

Aon has served subpoenas *duces tecum* and *ad testificandum* on various third-parties who may possess documents or information related to the claims and defenses at issue in this case. Aon is conferring with various third-parties regarding the scope of the subpoenas in an effort to resolve issues without the need for Court intervention.  Consistent with Magistrate Judge Fitzsimmons' guidance at the April 4, 2013 hearing, Aon has held in abeyance requests to certain third parties for the production of documents related to mediation or the settlement of claims arising out of the incident giving rise to this lawsuit, pending Aon's review of Plaintiffs' productions and resolution of Plaintiffs' objections to the production of mediation and settlement material.  Now that Aon has reviewed these items, Aon has sought Magistrate Judge Fitzsimmons' assistance in resolving the parties' dispute over these categories of documents. Aon has provided or is in the process of providing to the other Parties copies of third-party document productions received by Aon from these non-parties.

With respect to documents produced by third-party Nixon Peabody LLP, counsel for O&G conducted the privilege review and produced privilege logs for this document production. Aon and counsel for O&G have met and conferred, without success, regarding privilege claims concerning the Nixon Peabody documents.  Accordingly, Aon has sought Magistrate Judge Fitzsimmons' assistance in resolving the dispute regarding these privilege claims.

O&G's Position

O&G timely completed its document production of over 78,000 documents and also timely served its privilege logs, comprised of over 7,000 entries. O&G and Aon have met and conferred regarding several discovery issues. The parties have reached an impasse with respect to certain of those issues, and continue to discuss others.

O&G is preparing for depositions, which are schedule to begin in January.

Kleen's Position

Kleen has completed its document production and interrogatory responses. Kleen is in the process of reviewing the other parties' responses as well. Kleen is working collaboratively with the other parties to schedule depositions in this matter.

Keystone's Position

Aon has served three sets of document requests on Keystone. Keystone responded to Aon's Third Set of Requests for Production of Documents on October 23, 2013, and objected thereto based upon various grounds. Those objections have yet to be resolved although the parties have met and conferred regarding same. Keystone has produced documents with pages totaling in the thousands. Keystone has produced responsive documents that they have electronically in their electronic root form, and despite errors with the production are working with their vendor to make sure that they comply with the parties' stipulated agreement regarding electronically stored information. Aon is in possession of all of Keystone's responsive documents to which it has not interposed an objection.

Litchfield's Position

Litchfield has completed its document production, and reviewed the other parties' productions. Depositions are scheduled to begin in January.

**Coordinated Discovery**

In an effort to avoid undue expense and duplication of efforts, on or about September 26, 2013, the Parties entered into stipulations concerning the use of discovery, which provide that discovery obtained in the above-captioned matter, including written discovery responses, documents produced, and testimony given, may be used in the parallel action pending in Connecticut State Court, LLI-CV-12-6006448-S (the "State Action") as if it occurred therein, and vice versa.

Respectfully submitted,

| | |
|---|---|
| By: ___/s/_____ | By: ___/s/_____ |
| Richard W. Bowerman, ct04181 | Finley Harckham, ct26403 |
| Michael G. Caldwell, ct26561 | Dennis J. Artese, ct28071 |
| LeClairRyan, P.C. | Anderson Kill P.C. |
| 545 Long Wharf Drive, 9th Floor | 1251 Avenue of the Americas |
| New Haven, Connecticut 06511 | New York, New York 10020 |
| Tel. No.: (203) 672-3202 | Tel No.: (212) 278-1000 |
| Fax No.: (203) 672-3237 | fharckham@andersonkill.com |
| Richard.bowerman@leclairryan.com | dartese@andersonkill.com |
| | *Attorneys for Plaintiff O&G Industries, Inc.* |

Blair G. Connelly
Kira S. Dabby
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Tel No.: (212) 906-1200
Fax No.: (212) 751-4864
Of Counsel

*Attorneys for Defendant*
*Aon Risk Services Northeast, Inc.*

By: ___/s/_____         By: ___/s/_____

Lee Hoffman                          Justin Clark
Matthew L. Stone
Pullman & Comley, LLC                Davis & Clark
90 State House Square                148 Eastern Blvd. Suite 100
Hartford, Connecticut 06103          Glastonbury, Connecticut 06033
Tel No.: (860) 424-4315              Tel. No.: (860) 430-9200

*Attorneys for Plaintiff Kleen Energy*   *Attorneys for Plaintiff Keystone*
*Systems, LLC*                           *Construction and Maintenance Services, Inc.*


By: ___/s/_____

Kurt B. Fliegauf
Conn Kavanaugh Rosenthal Peisch & Ford, LLP
Ten Post Office Square
Boston, Massachusetts 02109
Tel. No. (617) 482-8200

*Attorneys for Third-Party Defendant*
*Litchfield Insurance Group*